AGENCY DEVELOPMENT, INC., A Michigan corporation, and Patrick D. Patterson, as Managing General Agent, Plaintiff,

v.

MEDAMERICA INSURANCE COMPA-NY OF NEW YORK, a New York corporation, et al., Defendants.

No. 02–CV–6663L.

United States District Court, W.D. New York.

June 17, 2004.

Brian H. Rolfe, Falcone & Rolfe, P.C., Joseph Falcone, Joseph Falcone, P.C., Southfield, MI, for Plaintiff.

Daniel J. Moore, Harris Beach LLP, Pittsford, NY, for Defendants.

## DECISION AND ORDER

LARIMER, District Judge.

### INTRODUCTION

By order entered March 24, 2004, I granted defendants' motion for summary judgment and dismissed plaintiffs' first, second and third claims which alleged federal and state antitrust violations and violations of the Lanham Act. Familiarity with the decision, reported at 310 F.Supp.2d 538, is presumed.

I also dismissed the balance of plaintiffs' complaint, alleging state law claims, pursuant to 28 U.S.C. § 1367(c)(3), and denied as moot plaintiffs' motion to amend those claims. Plaintiffs now move (Dkt.# 60) for reconsideration of that part of my decision which dismissed the state law claims and denied as moot their request to amend those claims.

The motion to reconsider is granted. Upon reconsideration, it appears that diversity jurisdiction was adequately pleaded. Nevertheless, on the merits, defendants remain entitled to summary judgment on all those claims.

### PROCEDURAL HISTORY

Defendants' motion for summary judgment (Dkt.# 24) was directed at plaintiffs' first amended complaint (Dkt.# 2). In response, plaintiffs moved for permission to file a second amended complaint that was nearly four times as long as the first amended complaint and set forth in substantially more detail the allegations

against defendants. (Dkt.# 43). The proposed second amended complaint essentially asserted the same state law claims against defendants and added a new claim for punitive damages.

Plaintiffs then filed two subsequent motions to amend that modified two of the proposed claims in the proposed second amended complaint. By Docket # 51, plaintiffs withdrew their proposed ninth claim that sought punitive damages separately, and sought instead to add punitive damages as part of their breach of contract, fraud, interference with contract, and unjust enrichment claims. By Docket # 53, plaintiffs sought, *inter alia*, to substitute their proposed common law unfair competition claim for a claim under New York's General Business Law § 349.

On reconsideration, the Court grants, in part, plaintiffs' first motion to amend (Dkt.# 43). Plaintiffs' fourth claim (breach of contract), fifth claim (fraud), seventh claim (interference with contract), and eighth claim (unjust enrichment) are amended.[1] The Court treats defendants' motion for summary judgment (Dkt.# 24) as against these claims as amended, and, for the reasons stated below, grants summary judgment to defendants.

In addition, the Court denies as moot plaintiffs' second motion to amend (Dkt.# 51) to add claims for punitive damages relative to these same claims because summary judgment is granted. Plaintiffs' third motion to amend that sought to assert a claim for unfair competition under General Business Law § 349 (Dkt.# 53) is denied because, as discussed below, such amendment would be futile.

---

[1]. The Court deems as withdrawn the remainder of plaintiff's first motion to amend (Dkt.# 43), as it pertains to the sixth claim (unfair competition) and the ninth claim (punitive damages) because plaintiff filed a second and a third motion to amend which addressed those claims.

## DISCUSSION

### I. Defendants' Motion For Summary Judgment on Plaintiffs' State Law Claims

Plaintiffs' state law claims are all essentially based on the same factual allegations. Plaintiffs claim that defendants improperly solicited Eric Dellinger, a corporate officer and agent of ADI, to work for MANY just before defendants terminated the agreement. Dellinger, who was the corporate officer in charge of ADI's Rochester office and the manager of ADI's sales force, resigned from ADI to take a position with MANY one day before MANY terminated the agreement with plaintiffs. Plaintiffs also claim that defendants induced Dellinger and other ADI sales agents to breach their contracts and their fiduciary duties to ADI by recruiting them to leave ADI's employ without giving proper notice.

Plaintiffs' so-called "fraud" claim is difficult to discern. Plaintiffs assert that defendants committed fraud by not advising ADI, in advance, that they intended to recruit and hire Dellinger, Plaintiffs assert that these activities harmed them because they could not "mitigate" their damages, caused by Dellinger's departure nor could they attempt to prevent termination of the agreement. According to plaintiffs, there was a "special relationship" of confidence and trust between the parties "that was at a higher level than in a normal sales relationship", and more akin to a fiduciary relationship (Dkt.# 50, p. 9). As a result, plaintiffs assert that defendants' conduct described above was "unfair" and is actionable under state law as breach of the implied covenant of good faith and fair dealing, fraud, interference with contractual relations, and unjust enrichment. As a

remedy, plaintiffs seek monetary damages of $22,000,000 for past and future commissions over a ten-year period from the date of the termination of the agreement.

These state claims fare no better than the federal claims that have already been dismissed. Plaintiffs are nothing more than disappointed suitors. They lost the contract which had been lucrative but such a condition is not actionable.

## A. Breach of Contract

■ Defendants are entitled to summary judgment on plaintiffs' breach of contract claim. Although plaintiffs concede that MANY did not breach an express term of the agreement, they assert that MANY breached the implied covenant of good faith and fair dealing inherent in the agreement when it recruited and hired Dellinger.

■ "[T]he duty of good faith and fair dealing between the parties to a contract is well recognized" under New York law. *See Mark Patterson, Inc. v. Bowie*, 237 A.D.2d 184, 186, 654 N.Y.S.2d 769 (1st Dep't 1997) (citing *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 318, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995) ("implicit in every contract is a covenant of good faith and fair dealing")). The covenant requires that neither contracting party engage in conduct that will have the effect of destroying or injuring the rights of the other party to receive the benefit of the contract. *See Dalton v. Educational Testing Serv.*, 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 663 N.E.2d 289 (1995). Courts generally enforce the covenant "where an implied promise was 'so interwoven in the whole writing' of a contract as to be necessary for effectuation of the purposes of the contract." *M/A–COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir.1990) (quoting *Havel v. Kelsey–Hayes*

*Co.*, 83 A.D.2d 380, 384, 445 N.Y.S.2d 333 (4th Dep't 1981)). However, the covenant "does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract." *Id.* at 136 (citations omitted); *see also Sterbenz v. Attina*, 205 F.Supp.2d 65, 70 (E.D.N.Y.2002).

Here, plaintiffs contend, in conclusory fashion, that MANY "destroyed" plaintiffs' right to receive the fruits of the agreement by recruiting and hiring Dellinger. According to plaintiffs, MANY should not have recruited Dellinger because his employment with ADI was "critical" to plaintiffs performance of the agreement. Plaintiffs argue that it was only after MANY secured the services of Dellinger that MANY terminated the contract with ADI. Thus, according to plaintiffs, the very act of successfully recruiting Dellinger caused the contract to terminate. These allegations are not supported by the record.

First of all, the "intended benefit" of the agreement for the plaintiffs was the substantial first-year and renewal commissions that they received from the sale of MANY's Long Term Care Insurance policies ("LTCI"). Plaintiffs, however, do not dispute that they were paid all commissions owed under the agreement while it was in effect for over seven years. Nor is there any dispute that MANY continued to pay plaintiffs renewal commissions pursuant to the agreement *after* it was terminated in accordance with the terms and schedules set forth therein.[2] No reasonable jury could conclude that MANY's hiring of Dellinger was "the sole and direct cause[ ] of the destruction of the value of the contract" for plaintiffs. *M/A–COM Sec. Corp.*, 904 F.2d at 136–37 (noting that the "chain of causation" between defendants' conduct and plaintiff's loss was too attenuated to find that defendants breach

2. From 1999 to 2001, those commissions ex-

ceeded $5,000,000.

the covenant of good faith). Rather, it was the lawful termination of the agreement by MANY because ADI had suddenly been purchased by a competitor that caused plaintiffs to lose the commissions that they enjoyed during the term of the contract.

Second, the agreement was terminable with or without cause by either party on thirty days written notice to the other party. (Dkt.# 25, Ex. 2). MANY's conduct in terminating the agreement was in accordance with the express terms of the agreement. Plaintiffs could have negotiated for certain terms in the agreement regarding the hiring of officers or agents of the other party, but they did not. Plaintiffs did not have non-compete agreements with their sales agents or their officers.

 It is well-settled that the implied covenant "will not be expanded to a point of conflict with the express terms of the bargained-for exchange, and 'equitable considerations will not allow an extension of coverage beyond [the agreement's] fair intent and meaning in order to obviate objections which might have been foreseen and guarded against.'" *Mark Patterson,* 237 A.D.2d at 186, 654 N.Y.S.2d 769 (quoting *Caporino v. Travelers Ins. Co.,* 62 N.Y.2d 234, 239, 476 N.Y.S.2d 519, 465 N.E.2d 26 (1984)); *see also Sterbenz,* 205 F.Supp.2d at 70 ("a court is not at liberty to impose obligations inconsistent with those imposed under the written agreement.... Accordingly, a party that has acted in compliance with the rights expressly provided in the governing contract cannot be held liable for breaching an im-

plied covenant of good faith.") (internal citations omitted). The duty of good faith and fair dealing also does not create any obligations by either party that "go beyond those intended and stated in the express language of the contract." *Gruppo, Levey & Co. v. Icom Information & Communications, Inc.,* No. 01 Civ. 8922 JFK, 2003 WL 21511943 (S.D.N.Y. July 1, 2003). Here, however, plaintiffs seek to do just that.

Moreover, plaintiffs do not raise any genuine issue of fact to contradict MANY's assertion that it would have terminated the agreement under any circumstances whether Dellinger was hired or not. Plaintiffs do not contest the affidavit of William Naylon, Vice President of Finance and Capital Markets for MANY, in which Naylon explains the numerous business reasons that MANY decided to terminate the agreement with plaintiffs. A principal motivating factor was the purchase of ADI by one of MANY's competitor's, Penn Treaty. (Dkt. # 24, Naylon Aff., ¶ 34). That event had a direct impact on the contractual relationship between the parties. Dellinger's resignation from ADI was incidental. Plaintiffs also fail to explain how Dellinger's employ was "integral" to their performance under the agreement. Numerous individuals were capable of selling the insurance products previously sold by Dellinger.

Therefore, construing the facts in a light most favorable to the plaintiffs, I find that no genuine issue of fact exists regarding whether MANY breached the implied covenant of good faith and fair dealing and MANY is entitled to summary judgment.[3]

---

3. For purposes of this motion, the Court has assumed that plaintiffs' allegations were true and that MANY recruited Dellinger to work for MANY while the agreement was in effect. However, it appears that plaintiffs may have had a difficult time actually establishing this fact at trial. Plaintiffs failed to present any facts to contradict the affidavit of Dellinger filed on behalf of ADI, that states that *he*

*approached MANY* seeking employment after he became concerned about the future of ADI when it was purchased by Penn Treaty in January 1999. He was uncomfortable with the fact that ADI was performing services for a competing company, and his working relationship with ADI's management team changed after the Penn Treaty acquisition.

## B. Interference with Contract and Inducement of the Breach of Fiduciary Duty

■ For their seventh claim, plaintiffs assert that defendants knew of the "fiduciary" duties and contractual obligations (including the agent's obligation to give notice of termination and duty not to solicit other agents to leave the service of plaintiffs) that were owed to plaintiffs by their officers and agents, and intentionally solicited the breach of those fiduciary duties for purpose of causing plaintiffs harm. (Dkt.# 43, ¶¶ 269–270). Plaintiffs' assertion that these employees had "fiduciary" duties does not make it so. There was no contractual bar precluding ADI's employees from seeking employment elsewhere. Some employees left ADI, others did not.

■ To state a claim for tortious interference with contractual relations, a plaintiffs must allege (1) the existence of a valid contract between themselves and a third party; (2) defendants' knowledge of that contract; (3) defendants' intentional procuring of the contract's breach; and (4) damages. See Foster v. Churchill, 87 N.Y.2d 744, 749–50, 642 N.Y.S.2d 583, 665 N.E.2d 153 (1996).

Defendants are entitled to summary judgment. Plaintiffs cannot show that they suffered damages as a result of any of the conduct in which they allege defendants engaged. Even assuming that defendants induced agents and officers of ADI to leave without giving proper notice and induced them to recruit others to do so as well, plaintiffs cannot show how they were damaged by this conduct. The damages they seek are all of the lost commissions ($22,000,000) they claim would have occurred had the contract with MANY not been terminated in 1999. This is sheer speculation. Plaintiffs make no sensible argument regarding how the loss of a few sales agents who had agreements that were terminable at will by either party, resulted in the substantial damages they seek. If plaintiffs suffered loss, it was not for the reasons alleged. Rather, it was ADI's own acquisition by a major competitor of MANY that caused the rift between ADI and defendants.

■ In any event, this claim must also fail because the agency contracts that were allegedly breached were terminable at will, and thus are classified only as prospective contractual relations. Therefore, they cannot support a claim for tortious interference with contract. See .Amer. Preferred Prescription, Inc. v. Health Mgmt., Inc., 252 A.D.2d 414, 417, 678 N.Y.S.2d 1 (1st Dep't 1998). Moreover, plaintiffs must show that the defendants' conduct was somehow "wrongful" that rises to the level of "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, [or] some degrees of economic pressures." Hannex Corp. v. GMI, Inc., 140 F.3d 194, 206 (2d Cir.1998). They must also show that defendants acted with the sole purpose of harming ·plaintiffs. Slifer–Weickel, Inc. v. Meteor Skelly, Inc., 140 A.D.2d 320, 322, 527 N.Y.S.2d 553 (2d Dep't 1988) (to prevail on tortious interference claim, plaintiffs must show that defendants acted "with the intent to harm the plaintiffs, without economic or other lawful excuse or justification."). Plaintiffs conclusory allegations that defendants acted with such malice and engaged in such wrongful conduct is insufficient to withstand summary judgment.

Dellinger also states that neither MANY nor any other Excellus company solicited him to work for MANY. He also denies having any knowledge of MANY's decision to terminate the contract with ADI before that decision was made. (Dkt. # 24, Dellinger Aff. ¶¶ 5–12).

## C. Fraud

■ Plaintiffs' claim for fraud must also fail. Plaintiffs allege that "[b]y fraudulently not informing the plaintiff[s] that defendants had induced Eric Dellinger to breach his fiduciary duties" and leave ADI for MANY, defendants induced plaintiffs into a false belief. Defendants purposefully concealed the fact that they hired Dellinger because they knew that plaintiff would be harmed by the silence insofar as they would not have the opportunity to take any action to retain Dellinger and others. Plaintiffs also allege that defendants knowingly breached their duty to disclose material information to the plaintiff that they knew plaintiff would reasonably rely upon to their detriment. (Dkt.# 43, ¶¶ 259–64). Plaintiffs' assertions are not supported by the facts or the law.

■ This claim fails for several reasons. First, a claim for fraud does not arise where the fraud alleged relates to a contract between the parties. *See, e.g., Egan v. New York Care Plus Ins. Co. Inc.,* 277 A.D.2d 652, 653, 716 N.Y.S.2d 430 (3d Dep't 2000). As defendants correctly point out, "a simple breach of contract may not be transformed into a tort unless a legal duty independent of the contract itself has been violated." *Fleet Bank of New York v. Douglas–Guardian Warehouse Corp.,* 229 A.D.2d 962, 962, 645 N.Y.S.2d 384 (4th Dep't 1996). Plaintiffs seemingly recognize this rule of law by asserting in their complaint that the parties "were in a fiduciary and/or confidential relationship in 1999 and before." (Dkt.# 43, ¶ 259). Thus, according to plaintiffs, defendants owed plaintiff a fiduciary duty from which the duty to affirmatively disclose facts to ADI arose—here, the fact that MANY had hired Dellinger.

■ However, there is no evidence in the record to support plaintiffs' allegations that the parties had a fiduciary relationship. Instead, defendants have shown that the parties had a straight-forward business relationship that was the subject of a written agreement. It is settled that "[a] fiduciary relationship may exist where one party reposes confidence in another and reasonably relies on the other's superior expertise or knowledge ..., but an arms-length business relationship does not give rise to a fiduciary obligation." *WIT Holding Corp. v. Klein,* 282 A.D.2d 527, 529, 724 N.Y.S.2d 66 (2d Dep't 2001) (internal citations omitted).

Second, as with plaintiffs' claim for alleged interference with contract or fiduciary duty, plaintiffs cannot show how the damages they allege that they suffered were the result of the alleged fraudulent concealment of Dellinger being hired. Plaintiffs' damages are the result of the termination of the agreement with MANY and are unrelated to the actions MANY took vis-a-vis plaintiffs' former or current officers or agents.

## D. Unjust enrichment

■ As an alternative to its state law claims, plaintiffs argue that defendants have been unjustly enriched by hiring agents of plaintiffs for whom plaintiffs have incurred the expense of training. Under New York law, for plaintiffs to prevail on a claim of unjust enrichment, they must establish (1) that the defendants were enriched; (2) that the enrichment was at the plaintiffs' expense; and (3) that the circumstances are such that in equity and good conscience the defendants should return the money or property to the plaintiffs. *Universal City Studios, Inc. v. Nintendo Co.,* 797 F.2d 70, 79 (2d Cir.1986) (applying New York law); *see also State v. Barclays Bank,* 76 N.Y.2d 533, 561 N.Y.S.2d 697, 563 N.E.2d 11 (1990).

Assuming, *arguendo,* that the defendants could be considered to have been

"enriched" at the expense of plaintiffs, I find as a matter of law no circumstances exist that in equity and good conscience entitles them relief. Plaintiffs seek a remedy for conduct not forbidden by the express terms of an agreement.

First, pursuant to the contract, plaintiffs agreed to incur all expenses for training its sales force. Nothing in the parties' agreement or the agency agreements between ADI and their sales agents, however, prevented the sales agents from leaving ADI to work for a competitor. That plaintiffs never sought to protect themselves by having their agents sign non-compete agreements, or by expressly providing that MANY could not hire its agents, is not a circumstance that requires an equitable remedy. Furthermore, plaintiffs have continued to reap the rewards of their training efforts by collecting the renewal commissions from the sales the departed agents made while employed at ADI. In light of the undisputed facts set forth above, defendants are entitled to summary judgment on the unjust enrichment claim.

## II. Plaintiffs' Motion to Amend to add N.Y. General Business Law § 349 claim

Finally, plaintiffs move to amend their complaint to substitute their common law unfair competition claim for a claim pursuant to New York General Business Law § 349. (Dkt.# 53). That motion is denied. Plaintiffs allege that defendants published consumer-oriented advertisements that were misleading in a material way so as to confuse consumers into believing that MANY's insurance was issued by a not-for-profit company, and otherwise engaged in unspecified deceptive acts or practices in the conduct of their business, which resulted in a decrease in sales by plaintiffs.

To allow amendment to add this claim would be futile. In order to be actionable

under § 349, defendants' acts or practices must have a broad impact on consumers at large. Here, however, plaintiff's have not pleaded actual harm to the general public, which is an essential element of a § 349 claim. *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55–56, 698 N.Y.S.2d 615, 720 N.E.2d 892 (1999). Instead, plaintiffs merely allege injury to themselves (lost sales and profits). However, "[p]rivate contract disputes unique to the parties ... would not fall within the ambit of the statute." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995). Therefore, their § 349 claim is insufficient as a matter of law. *Occidental Chem. Corp. v. OHM Remediation Servs. Corp.*, 173 F.R.D. 74, 77 (W.D.N.Y.1997) (plaintiff must "plead and prove injury to the public generally, not just to himself."); *see also Azby Brokerage, Inc. v. Allstate Ins. Co.*, 681 F.Supp. 1084 (S.D.N.Y.1988) (complaint that alleged injury to insurance brokers who lost commissions, rather than to consumers in general, did not state claim under GBL § 349); *Harary v. Allstate Ins. Co.*, 983 F.Supp. 95 (E.D.N.Y.1997) (conclusory allegations that public was harmed by conduct are not sufficient to state a claim under N.Y. Gen. Bus. L. § 349).

Plaintiffs' motion to amend to add a § 349 claim is denied as futile for the additional reason that defendants' failure to disclose MANY's for-profit status while referencing its not-for-profit affiliation with its parent company is not misleading or deceptive. In fact, the statements themselves are true, and defendants did not engage in any affirmative misrepresentations of fact. Therefore, for the same reasons that I denied plaintiffs' motion to amend to add a claim under the Lanham Act, I find as a matter of law that plaintiffs' allegations are insufficient to establish any deceptive acts or practices under

§ 349. *See Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir.2000) (holding that a required element of a § 349 claim is that the defendants' actions "were misleading in a material way . . . ."); *Marcus v. AT&T Corp.*, 138 F.3d 46, 64 (2d Cir.1998) (dismissing § 349 claim because plaintiffs could not show any deceptive conduct that a reasonable consumer would find misleading).

## CONCLUSION

Plaintiffs' motion for reconsideration (Dkt.# 60) is granted; the Court does have jurisdiction over the plaintiffs' fourth, fifth, sixth, seventh, eighth, and ninth state law claims.

Plaintiffs' motion to amend (Dkt.# 43) is granted, in part, and plaintiffs' fourth, fifth, seventh, and eighth claims are amended.

Plaintiffs' motion (Dkt.# 51) to amend its ninth claim for punitive damages is denied as moot.

Plaintiffs' motion (Dkt.# 53) to amend their sixth claim to state a claim under General Business Law § 349 is denied.

Defendants' motion (Dkt.# 24) for summary judgment is granted, and plaintiffs' fourth, fifth, sixth, seventh, and eighth claims are dismissed with prejudice.

IT IS SO ORDERED.