**DISCOVER GROUP, INC. and American Toner Products, Inc., Plaintiffs,**

v.

**LEXMARK INTERNATIONAL, INC., Defendant.**

No. 03–CV–3796–ILG.

United States District Court, E.D. New York.

Sept. 2, 2004.

Solomon E. Antar, Brooklyn.

William M. Murphy, Robinson Murphy & McDonald, New York.

## MEMORANDUM & ORDER

GLASSER, District Judge.

Before the Court is the motion of defendant Lexmark International, Inc. ("Lexmark" or "defendant") to dismiss the complaint of plaintiffs Discover Group, Inc. ("Discover Group") and American Toner Products, Inc. ("American Toner") for failure to state a claim upon which relief can be granted. For the reasons that follow, Lexmark's motion is granted.

## FACTUAL BACKGROUND

Plaintiffs American Toner and Discover Group are New York corporations engaged in the business of importing and distributing printer ink cartridges and imaging film rolls for facsimile machines. (Compl. ¶¶ 1, 6.) American Toner is the wholly-owned subsidiary of Discover Group. (Compl. ¶ 6.) Defendant Lexmark, a Delaware cor-

poration with its principal place of business in Kentucky, develops, manufactures, and sells laser printers and toner cartridges. (Def. Mem. at 1.) Sortek International Corporation and Facsimile Paper Connection Corporation ("Sortek/FPC") are related corporations that are authorized distributors of Lexmark products.

On July 17, 2001, Lexmark entered into a written Authorized Dealer Agreement with Discover Group ("Dealer Agreement"), which authorized Discover Group to purchase products from Lexmark for marketing to resellers and for Discover Group's "internal use only in Latin America & the Caribbean with the exception of Puerto Rico." (Compl. ¶ 9; Patton Aff. Ex. 2.) According to plaintiffs, authorized distributors such as Sortek/FPC are entitled to purchase Lexmark products at lower prices than authorized dealers such as plaintiffs. As a result, Discover Group purchased Lexmark products from Sortek/FPC, as well as from Lexmark directly. (Compl. ¶ 11.) Discover Group furnished Lexmark products to its subsidiary, American Toner. (Compl. 10.)

On March 19, 2002, plaintiff American Toner entered into a contract with the State of Michigan ("Michigan Contract"), pursuant to which American Toner became the exclusive supplier of Lexmark printer toner cartridges to Michigan's Family Independence Agency. (Compl. ¶ 13.) In order to fulfill the Michigan Contract, American Toner planned to obtain Lexmark products from Discover Group, which had purchased them from Sortek/FPC. (Compl. ¶ 14.) The Michigan Contract provided that the State of Michigan could cancel the contract "for its convenience, in whole or part, if the State determines that such a cancellation is in the State's best interest." (Patton Aff. Ex. 1.)

According to plaintiffs, defendant Lexmark had previously attempted to procure a contract with the State of Michigan. (Compl. ¶ 15.) Plaintiffs allege that when defendant learned of American Toner's contract with Michigan, defendant induced the State of Michigan to discontinue doing business with the plaintiffs and to breach the Michigan Contract. (Compl. ¶ 16.) Plaintiffs further allege that defendant threatened Sortek/FPC to cut off all supplies of Lexmark products and revoke its distributorship agreement if Sortek/FPC continued to provide Lexmark products to plaintiffs. (Compl. ¶ 17.) According to plaintiffs, defendant did so in order to render plaintiffs unable to fulfill the Michigan Contract. (Compl. ¶ 17.) As a result, Sortek/FPC ceased doing business with plaintiffs and cancelled all pending orders. (Compl. ¶ 19.)

On April 7, 2003, defendant Lexmark cancelled the Dealer Agreement with Discover Group and, as a result, American Toner was unable to fulfill the Michigan Contract. (Compl. ¶¶ 13, 20.) The State of Michigan subsequently cancelled the Michigan Contract, which plaintiffs value at $5,569,200.00. (Compl. ¶ 21.) According to plaintiffs, the efforts by defendant were designed solely to harm plaintiffs without any justification. (Compl. ¶ 24.) Plaintiffs believe that defendant or its distributors have now begun supplying the State of Michigan with Lexmark products. (Compl. ¶ 22.) Plaintiffs claim that as a result of defendant's actions, they have sustained severe financial harm. (Compl. ¶ 26.)

Plaintiffs have filed this suit against defendant for tortious interference with contract, tortious interference with business relationships, and prima facie tort. Defendant now moves this Court to dismiss the complaint for failure to state a claim upon which relief can be granted.

## DISCUSSION

### I. Legal Standard

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must take all allegations in the complaint as true and draw all reasonable inferences in favor of plaintiffs. *Ortiz v. Cornetta,* 867 F.2d 146, 149 (2d Cir.1989). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir.1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992).

The Court's consideration of a motion to dismiss pursuant to 12(b)(6) is limited to the factual allegations in the complaint, documents incorporated by reference in the complaint, matters of which judicial notice may be taken, and documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit. *Brass v. Am. Film Tech., Inc.,* 987 F.2d 142, 150 (2d Cir.1993). When a party "introduces matter extraneous to the pleadings, the Court must convert the motion to dismiss into a motion for summary judgment or exclude the extraneous documents from consideration." *AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.,* 2003 WL 21203503, at *3 (S.D.N.Y. May 22, 2003).

Plaintiffs argue that this motion should be converted into a motion for summary judgment because defendant annexed and referred to exhibits in its motion that were not included in the original complaint. (*See* Patton Aff. Ex. 1–3.) When, however, " 'a plaintiff chooses not to attach to the complaint or incorporate by

reference a [document] upon which it solely relies and which is integral to the complaint,' the court may nevertheless take that document into consideration in deciding the defendants' motion to dismiss, without converting the motion into one for summary judgment." *AIM*, 2003 WL 21203503, at *3 (in suit for tortious interference with contract, dealership agreement between parties was not extraneous and was incorporated by reference in the complaint) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992)). When a document is integral to the complaint, a plaintiff is on notice that it might be considered by the court in a motion to dismiss. *See Cortec*, 949 F.2d at 48.

 Here, plaintiffs refer in their complaint to the Dealer Agreement between Lexmark and Discover Group, which they allege was later cancelled by defendant. (*See* Compl. ¶¶ 9, 20.) That agreement is integral to plaintiffs' claim for tortious interference and is properly considered by the Court on a motion to dismiss. (*See* Patton Aff. Ex. 2.) Similarly, the Michigan Contract forms the basis of plaintiffs' claim for tortious interference with contract. (*See* Compl. ¶¶ 13–17, 20–22.) Attached as Exhibit 1 to the Patton Affidavit, the Michigan Contract is properly considered by the Court on a motion to dismiss as well.[1]

## II. Tortious Interference with Michigan Contract[2]

Parties disagree whether the law of Michigan or New York is applicable to plaintiffs' claim that defendant tortiously interfered with the Michigan Contract. A federal court sitting in diversity must apply the choice-of-law rules of the forum state. *Maryland Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 151 (2d Cir.2003) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Thus, New York choice of law jurisprudence determines whether to apply New York or Michigan law to this cause of action.

 "The first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *In the Matter of Allstate Ins. Co.*, 81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 613 N.E.2d 936 (1993). In order to state a claim for tortious interference with contract under New York law, plaintiffs must demonstrate "the existence of a valid contract between the plaintiff[s] and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996) (quoting *Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 120, 151 N.Y.S.2d 1, 134 N.E.2d 97 (1956)). It is

---

**1.** The agreement between Sortek/FPC and Lexmark, however, is not directly referenced in the complaint, nor is it integral to plaintiffs' claims and was not considered by the Court. *See AIM*, 2003 WL 21203503, at *4 n. 7.

**2.** Plaintiffs have not alleged the existence of a contract between American Toner or Discover Group and Sortek/FPC and, therefore, fail to plead a necessary element of this claim. *See*

*Robins v. Max Mara, U.S.A. Inc.*, 923 F.Supp. 460, 468 (S.D.N.Y.1996) ("In order for the plaintiff to have a cause of action for tortious interference of contract, it is axiomatic that there must be a breach of that contract by the other party") (internal quotes omitted). To the extent that the first cause of action alleges tortious interference with a contract between plaintiffs and Sortek/FPC, it is dismissed.

well-settled in New York that "[a] contract terminable at will cannot be the basis for a tortious interference with contract claim" because "there can be no breach of contract, a necessary element for tortious interference with contract, when the contract may be terminated at will." *AIM,* 2003 WL 21203503, at *5 (citing *Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.,* 50 N.Y.2d 183, 428 N.Y.S.2d 628, 406 N.E.2d 445, 450 (1980); *World Wide Communications, Inc. v. Rozar,* 1997 WL 795750, at *7 (S.D.N.Y. Dec. 30, 1997); *Coliniatis v. Dimas,* 848 F.Supp. 462, 470 (S.D.N.Y.1994); *Miller v. Mount Sinai Med. Ctr.,* 288 A.D.2d 72, 733 N.Y.S.2d 26 (1st Dep't 2001); *Snyder v. Sony Music Entm't, Inc.,* 252 A.D.2d 294, 299, 684 N.Y.S.2d 235 (1st Dep't 1999); *Am. Preferred Prescription, Inc. v. Health Mgmt., Inc.,* 252 A.D.2d 414, 417, 678 N.Y.S.2d 1 (1st Dep't 1998)).

■ The elements of a tortious interference with contract claim under Michigan law are "(1) the existence of a contract; (2) a breach of the contract; and (3) instigation of the breach without justification by the defendant." *Goodson v. R.C. Eng'g and Mgmt. Servs., Inc.,* 1997 WL 33344759, at *2 (Mich.Ct.App. June 27, 1997), *appeal denied,* 458 Mich. 853, 587 N.W.2d 632 (1998). There are two conflicting lines of authority from the Michigan Court of Appeals regarding whether an action for tortious interference with contract may be maintained where the contract is terminable at will. *Compare Dzierwa v. Michigan Oil Co.,* 152 Mich. App. 281, 393 N.W.2d 610 (Mich.Ct.App. 1986) (an employee cannot bring a claim for tortious interference with an at will employment contract), *with Feaheny v. Caldwell,* 175 Mich.App. 291, 304, 437 N.W.2d 358 (Mich.Ct.App.1989) (tortious interference with an at-will contract is actionable because "an at-will employee who enjoys the confidence of his or her employer has the right to expect that a third party will not wrongfully undermine the existing favorable relationship"); *see also Environair, Inc. v. Steelcase, Inc.,* 190 Mich.App. 289, 295, 475 N.W.2d 366 (Mich. Ct.App.1991) (in a non-employment case limiting plaintiff's recovery to nominal damages because the nature of the relationship between the parties "was one founded upon a contract that was terminable at will" and the plaintiff's "mere subjective expectation of the continuation of the contract could not justify an expectation any greater"). The Michigan Supreme Court has not ruled on the issue.

In *Stanek v. Greco,* 323 F.3d 476, 478–79 (6th Cir.2003), the Sixth Circuit Court of Appeals surveyed these conflicting lines of Michigan cases and found persuasive those cases allowing a claim for tortious interference where the contract was terminable-at-will. Although the issue is not settled in Michigan. "[t]he weight of authority holds that wrongful interference with contracts terminable at will is actionable," *Warde v. Kaiser,* 887 F.2d 97, 102 (6th Cir.1989) (interpreting Tennessee law) (citing *Prosser and Keeton on Torts* (5th ed. 1984)). "[T]he overwhelming majority of cases have held that interference with employments or other contracts terminable at will is actionable, since until it is terminated the contract is a subsisting relationship, of value to the plaintiff, and presumably to continue in effect." W. Prosser, *Law of Torts,* § 129 at 932–33 (4th ed. 1971); *see also Restatement (Second) of Torts* § 766 cmt. g (1979) (a defendant may not improperly interfere with a contract at will because "the contract is valid and subsisting" but it may be considered when determining the damages sustained by plaintiff.) In light of the actual conflict between Michigan and New York law, the Court must determine which state's law to apply.

██ In a tort claim, such a this, New York applies the "greater interest test," under which "controlling effect is given to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation." *See Robins*, 923 F.Supp. at 465 (citing *Babcock v. Jackson*, 12 N.Y.2d 473, 481, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963)). Where, as here, the parties are domiciled in different states and the issue is the standard governing defendant's conduct, "the place or location of the tort is determinative." *Weizmann Inst. of Sci. v. Neschis*, 229 F.Supp.2d 234, 249 (S.D.N.Y. 2002). Because tortious interference with contract is a conduct-regulating tort, this Court must look to the locus of the tort to determine which jurisdiction's law should apply. *See Hidden Brook Air, Inc. v. Thabet Aviation Int'l Inc.*, 241 F.Supp.2d 246, 277 (S.D.N.Y.2002).

The court in *Hidden Brook*, 241 F.Supp.2d at 277, analyzed whether to apply the law of New York or Quebec in a cause of action for tortious interference with contract where the plaintiff was domiciled in Massachusetts and the defendant in Kansas. Plaintiff argued that it had sustained damages in New York and therefore that New York law should apply, while the defendant argued that Quebec law should apply. The court wrote:

> In this case, the site where Hidden Brook suffered damages due to Raytheon's allegedly tortious conduct determines the locus of the tort. That is because, "when 'the defendant's . . . conduct occurs in one jurisdiction and the plaintiff's injuries are suffered in another, the place of the wrong is considered to be the place where the last event necessary to make the actor liable occurred.'" *Frink Am. Inc. v. Champion Road Mach. Ltd.*, 48 F.Supp.2d 198, 205 (N.D.N.Y.1999) (emphasis omitted)

(quoting *Schultz*, 65 N.Y.2d at 195, 491 N.Y.S.2d at 90, 480 N.E.2d at 679). The tort of tortious interference with contract requires that the plaintiff suffer damages, which is the last event that would render a putative tortfeasor liable.

*Id.* at 277; *see also Weizmann*, 229 F.Supp.2d at 249–50. Regarding the defendant's assertion that Quebec law should apply, the court wrote, "neither party to the tortious interference with contract claim . . . is domiciled in Quebec. . . . Thus even were the parties' domiciles relevant to the choice of law analysis, this factor would in no way counsel application of Quebec law." *Id.* at 277 n. 15. The court determined that the plaintiff sustained damages either in New York or in Massachusetts, its principal place of business. *Id.* at 278. Because the laws of these states were not in conflict, the court did not go on to decide whether to apply New York or Massachusetts law. *Id.*

██ Here, plaintiffs are New York corporations and citizens of New York State. Although they had a contract with the State of Michigan, the last event that would have rendered Lexmark liable was plaintiffs' alleged suffering of damages. According to plaintiffs, they sustained financial injuries and damages in an amount not less than $5,569,200 based on the cancellation of the Michigan Contract. The financial injury that plaintiffs allege was suffered by plaintiffs where they reside and do business, in New York. Neither the alleged action of defendant nor the alleged damages suffered by plaintiffs occurred in Michigan. New York has the greater interest in regulating this conduct and thus, New York law should apply.

Plaintiffs do not dispute that the Michigan Contract was terminable by the State of Michigan. Because contracts terminable-at-will may not form the basis of a

tortious interference with contract claim in New York, this claim must be dismissed. *See AIM,* 2003 WL 21203503, at *5.

### III. Tortious Interference with Business Relations[3]

■ To state a claim for tortious interference with business relations, plaintiffs must allege that "(1) there is a business relationship between the plaintiff and a third party; (2) the defendant, knowing of that relationship, intentionally interferes with it: (3) the defendant acts with the sole purpose of harming the plaintiff, or, failing that level of malice, uses dishonest, unfair, or improper means; and (4) the relationship is injured." *Goldhirsh Group, Inc. v. Alpert,* 107 F.3d 105, 108–09 (2d Cir.1997). Improper means include "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the contract." *NBT Bancorp Inc. v. Fleet/Norstar Finan. Group, Inc.,* 87 N.Y.2d 614, 621, 641 N.Y.S.2d 581, 664 N.E.2d 492 (1996) (quoting *Guard–Life Corp.,* 50 N.Y.2d at 193–94, 428 N.Y.S.2d 628, 406 N.E.2d 445). As compared to the tort of tortious interference with contract, "[w]here there has been no breach of an existing contract, but only interference with prospective contract rights ... plaintiff must show more culpable conduct on the part of the defendant." *Id.* at 621, 664 N.E.2d 492. Particularly where parties are competitors, "it may excuse [defendant] from the consequences of interference with prospective contractual relationships, where the interference is intended at least in part to advance the competing interest of the interferer, no unlawful re-

straint of trade is effected, and the means employed are not wrongful." *Guard–Life,* 50 N.Y.2d at 190–91, 406 N.E.2d at 448–49.

■ Plaintiffs claim that defendant interfered with their future business relations with Sortek/FPC and the State of Michigan by threatening to cut off Sortek/FPC's supply of goods and revoke its distributorship agreement. Beyond these conclusory allegations, however, plaintiffs fail to demonstrate that defendant's *sole* motive was to harm plaintiffs. To the contrary, plaintiffs' complaint describes defendant's previous attempt to procure a contract with the State of Michigan "for its own benefit" as well as defendant's supplying the State of Michigan with products following the cancellation of the Michigan Contract. (Compl.¶¶ 15, 22.) *See H & R Indus., Inc. v. Kirshner,* 899 F.Supp. 995, 1009 (E.D.N.Y.1995) ("even if the interference was intended, if defendant acted in part to advance his own interests the claim must fail"). Defendant was plainly competing with plaintiffs for the State of Michigan's toner cartridge business and was not motivated solely, if at all, by a desire to harm plaintiffs.

Moreover, defendant's threat to revoke Sortek/FPC's distributorship agreement and to deprive it of supplies was not wrongful. *See Photographic Imp. & Distrib. Corp. v. Elgeet Optical Co., Inc.,* 122 N.Y.S.2d 215, 216, 282 A.D. 223 (1st Dep't. 1953) (defendants' statement to mutual distributors that defendants would not sell to them if they continued to sell plaintiffs' products "does not amount to malicious interference .... It appears to be only a matter of business policy and selection of customers on defendants' part, which how-

---

**3.** This tort is also called tortious interference with business advantage, business relations, economic relations, and prospective economic advantage. The elements of each are the same. *See PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.,* 818 F.2d 266, 269 (2d Cir.1987).

ever it may be criticized, does not amount to illegality"). Because defendant did not act with the sole purpose of harming plaintiffs, or use dishonest, unfair, or improper means, defendant's motion to dismiss this cause of action is granted.

## IV. Prima Facie Tort

 A cause of action in prima facie tort consists of four elements: "(1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, (4) by an act or series of acts that would otherwise be lawful." *Silverman v. City of New York* 2001 WL 218943, at *9 (E.D.N.Y. Feb.2, 2001) (Glasser, J.) (quoting *Curiano v. Suozzi*, 63 N.Y.2d 113, 117, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (1984)). In order to state a cause of action for prima facie tort, "special damages must be alleged with sufficient particularity to identify actual losses" and "round sums without any attempt at itemization are insufficient." *Id.* at *10 (internal quotations omitted). Here, plaintiffs' complaint for this cause of action requests "unspecified damages." (*See* Compl. at 8.) This is insufficient to state a cause of action for prima facie tort insofar as it fails to plead special damages. *See Curiano*, 63 N.Y.2d at 117, 480 N.Y.S.2d 466, 469 N.E.2d 1324.

Furthermore, "there is no recovery in prima facie tort unless malevolence is the sole motive for defendant's otherwise lawful act." *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 333, 464 N.Y.S.2d 712, 451 N.E.2d 459 (1983). As discussed above, the complaint alleges that defendant was acting, at least in part, to further its own economic interests. (*See* Compl. ¶¶ 15, 22.) Because plaintiffs' complaint fails to allege special damages or malevolence, the cause of action for prima facie tort is dismissed.

## CONCLUSION

Defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is granted in full and plaintiffs' complaint dismissed in its entirety.

SO ORDERED.