OPINION OF THE COURT
 

 Smith, J.
 

 This action arises out of the sale by defendant Smith Barney Inc. of all of its stock in a merger with Primerica Corporation. The primary issue here is whether the complaint states any cause of action entitling plaintiffs to recover a $33 million tax liability or any other relief. Because we agree that the complaint fails to state any cause of action, we affirm the order of the Appellate Division dismissing the complaint in its entirety.
 

 In 1987, defendant Smith Barney and Primerica merged, with Primerica acquiring all of the shares of Smith Barney. At the time of the merger, plaintiff Lama Holding Company owned approximately 24.9% of the shares of Smith Barney. Lama was at all times the largest single shareholder of Smith Barney. The stock purchased by Lama was designated "Rana Common Stock.” Lama, incorporated under the laws of Delaware, was formed expressly to acquire and hold stock in Smith Barney for resale at a profit. Lama had purchased its interest in Smith Barney in 1982, for approximately $40 million, through a tritiered corporate structure. Lama was owned by two foreign entities, with 66.6% owned by Rana Investments Ltd., a British Virgin Islands corporation, and 33.3% owned by Rasha Investments, N.V., a Netherlands Antilles corporation. Rana owned 100% of Rasha, and both were part of a Middle Eastern investment group. The acquisition of Smith Barney stock by Lama was part of a complex structure created to take advantage of favorable United States tax treatment under the "Gen
 
 *419
 
 eral Utilities Doctrine,” pursuant to which a domestic corporation could sell its assets under certain circumstances without incurring tax liability.
 

 When Lama purchased the Smith Barney stock in 1982, it entered into a shareholders’ agreement (the June 1982 agreement) whereby it agreed not to sell its Smith Barney stock for four years. Under the 1982 agreement, Lama was granted the right of first refusal on any merger, and Smith Barney’s right to sell the remainder of its shares was limited. Lama decided to sell some or all of its Smith Barney stock in 1986 and, in September 1986, retained Bankers Trust Company as its financial advisor and sales representative. Plaintiffs, however, were unsuccessful in their attempt to sell any of their shares. Plaintiffs maintain that by various unlawful means, Smith Barney affirmatively tried to block, frustrate and hinder the sale of Lama’s Smith Barney stock.
 

 During 1986 and 1987 Smith Barney negotiated a merger with Primerica and, by May 1987, negotiations were apparently in their final stages. On May 19, 1987, Smith Barney’s chairman and president (the individual defendants) held a meeting in London (the May 19,1987 meeting) with representatives of Lama. Lama was informed that Smith Barney had secured a merger partner who was prepared to purchase all of Smith Barney’s stock; that virtually all of the other Smith Barney shareholders were expected to vote in favor of the merger and such majority would insure consummation of the merger without the support of Lama; and that because of considerations of time and secrecy, Lama would have to decide immediately (without the benefit of financial or legal counsel) whether it would vote its shares in favor of the merger. Lama’s representatives were additionally informed that if Lama chose not to vote in favor of the merger, it would be left in an unfavorable position as a minority shareholder in a reconstituted Smith Barney. Lama, thereafter, executed a one-page agreement to vote its shares in favor of the merger and waived its right of first refusal.
 

 Lama contends that its consent to the merger was fraudulently induced. Specifically, Lama maintains that at the May 19, 1987 meeting, defendants failed to disclose that the merger partner was Primerica, Primerica would or could withdraw from the merger if 5% of the holders of Smith Barney common stock did not approve the transaction, Smith Barney did not reveal the terms of the proxy statement which contained important tax information, and Smith Barney failed to advise
 
 *420
 
 Lama of the potential tax consequences of the sale of Lama’s Smith Barney stock.
 

 After executing the May 19, 1987 agreement, Lama learned that the General Utilities Doctrine had been repealed by the Tax Reform Act of 1986 and, as a result, the sale of its Smith Barney shares would constitute a taxable event. With knowledge of the likely substantial tax consequences of the merger, Lama sought to restructure Primerica’s acquisition of Smith Barney’s stock by having Primerica purchase Lama directly from Rana and Rasha which potentially eliminated Lama’s tax liability. Primerica refused, and the Smith Barney-Primerica merger closed in June 1987. As a result of the merger, Lama received over $163 million for its Smith Barney stock (a profit of approximately $90 million) and was subject to United States tax liability of over $33 million.
 

 Lama commenced an action in Federal court against its financial advisor Bankers Trust, its legal advisor Shearman & Sterling, and the defendants herein
 
 (Lama Holding Co. v Shearman & Sterling,,
 
 US Dist Ct, SD NY, Duffy, J., 89 Civ. 3639
 
 [see,
 
 758 F Supp 159]). The Federal securities claims against the defendants were dismissed for failure to state claims, and the pendent State claims were not retained. Plaintiffs then brought this action in State court, alleging fraud and misrepresentation, breach of fiduciary duty, negligent misrepresentation, tortious interference with contract and advantageous business relations, and breach of contract. Among other things, plaintiffs seek a judgment in the amount of $33 million, the tax liability, a "sum to be determined at trial, for Plaintiffs’ reasonably anticipated net financial gain from the disposition of The Smith Barney Investment to a third party purchaser, plus prejudgment interest,” and punitive damages.
 

 Supreme Court dismissed with prejudice plaintiffs’ fraud, misrepresentation and tortious interference claims in their entirety and dismissed the breach of fiduciary duty cause of action as asserted on behalf of Rana and Rasha. The court also dismissed the breach of contract claims asserted by Rasha on standing grounds.
 

 The Appellate Division modified and granted defendants’ motion to dismiss the complaint in its entirety, holding that (1) plaintiffs could "not recover damages in fraud or negligent misrepresentation since damages under those theories are limited to indemnity for actual pecuniary loss, and do not
 
 *421
 
 include the greater profit that could have been made but for the false representations,” (2) the claims for tortious interference with contract and prospective contract failed because no interference with contract occurred and the prospect of a contract was too speculative and, (3) assuming the truth of the allegations of breach of a fiduciary duty and breach of a contract based upon the shareholders’ agreement, plaintiffs received large profits from the sale of Smith Barney stock and the claim for additional damages was speculative (215 AD2d 314, 315). This Court granted leave to appeal and we now affirm.
 

 Fraud and Negligent Misrepresentation
 

 Counts one and three allege fraud and negligent misrepresentation. Specifically, plaintiffs argue that defendants misled Lama’s representatives at the May 19, 1987 meeting, thereby inducing their vote for the Smith Barney-Primerica merger. They claim as damages the amount of taxes they are required to pay. The issue is whether such consequential damages support the cause of action.
 

 In an action to recover damages for fraud, the plaintiff must prove a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury (see,
 
 Channel Master Corp. v Aluminum Ltd. Sales,
 
 4 NY2d 403;
 
 New York Univ. v Continental Ins. Co.,
 
 87 NY2d 308, 318). "The true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong” or what is known as the "out-of-pocket” rule
 
 (Reno v Bull,
 
 226 NY 546, 553;
 
 Hanlon v MacFadden Publ.,
 
 302 NY 502). Under this rule, the loss is computed by ascertaining the "difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain”
 
 (Sager v Friedman,
 
 270 NY 472, 481). Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained
 
 (see, Cayuga Harvester v Allis-Chalmers Corp.,
 
 95 AD2d 5). Under the out-of-pocket rule, there can be no recovery of profits which would have been realized in the absence of fraud
 
 (Foster v Di Paolo,
 
 236 NY 132;
 
 AFA Protective Sys. v American Tel. & Tel. Co.,
 
 57 NY2d 912).
 

 Accepting all of plaintiffs’ factual allegations as true, there is no actionable fraud or misrepresentation. Plaintiffs’
 
 *422
 
 tax liability was not caused by an act or omission by defendants, but rather by the repeal of the General Utilities Doctrine under the Tax Reform Act of 1986, six months prior to the May 19, 1987 meeting. Lama’s participation in the merger was a taxable event which required it to pay taxes as a result of the repeal of the General Utilities Doctrine. The complaint does not allege how defendants’ failure to disclose that Primerica was the merger partner or that several directors would be treated favorably by Primerica for their votes, was fraudulent, or proximately caused the tax consequences to Lama of participating in the merger. Plaintiffs additionally fail to allege how defendants could possibly have known of Lama’s ignorance of the change in the tax laws, requiring Smith Barney, as opposed to plaintiffs’ own financial and legal counsel, to provide such information.
 

 Even if the claims of fraud were sufficiently alleged, plaintiffs would be limited to recovering their losses.
 
 (Reno v Bull
 
 226 NY 546,
 
 supra; see also, Hotaling v Leach & Co.,
 
 247 NY 84, 88 ["actual pecuniary loss sustained as a direct result of the wrong is the measure to be applied in fixing damages.”]) There were, however, no losses here because plaintiffs, like the rest of Smith Barney’s shareholders, received more than twice the fair market value for their shares.
 

 Further, the loss of an alternative contractual bargain (Primerica’s purchase of Lama from Rana and Rasha rather than the purchase of stock owned by Lama) cannot serve as a basis for fraud or misrepresentation damages because the loss of the bargain was "undeterminable and speculative”
 
 (Dress Shirt Sales v Hotel Martinique Assocs.,
 
 12 NY2d 339, 344). While plaintiffs allege that but for defendants’ fraud, Lama could have exercised its 25% appraisal rights to force Primerica to withdraw from the merger with Smith Barney and accept plaintiffs’ offer to purchase Lama from Rana and Rasha, nowhere do plaintiffs allege that Primerica’s refusal to go forward with Lama’s proposal was because of defendants’ fraud rather than an independent business decision made by Primerica.
 

 Nor does the out-of-pocket rule allow for recovery of the payment of taxes, couched as consequential damages or otherwise. This case is similar to
 
 Alpert v Shea Gould Climenko & Casey
 
 (160 AD2d 67), where investors in a tax shelter sued the law firms that advised them, claiming lost profits and tax benefits they would have obtained had they invested in a viable tax shelter and not relied on their advisor’s opinions.
 
 *423
 
 The
 
 Alpert
 
 Court rejected the plaintiffs’ claim for the recovery of taxes, holding the recovery of taxes paid would put the plaintiffs in a better position than had they not made the choice they did. "The recovery of consequential damages naturally flowing from a fraud is limited to that which is necessary to restore a party to the position occupied before commission of the fraud”
 
 (id.,
 
 at 71). Lama’s tax payment does not naturally flow from Smith Barney’s alleged fraud, but from a change in the tax laws, and recoupment by Lama of the taxes paid would put it in a better position than if it retained its Smith Barney shares.
 

 Breach of Fiduciary Duty
 

 Count two alleges that Smith Barney owed Lama a duty "to act in its best financial interest with the utmost good faith, with the highest degree of knowledge, skill, care, integrity, honesty, fairness and with undivided loyalty, and to comply with all other fiduciary duties.” Plaintiffs maintain that Smith Barney breached its fiduciary duty to Lama by failing to disclose to Lama, prior to issuance of the proxy material, that Primerica was Smith Barney’s merger partner and could or would have withdrawn from the merger if less than 95% of Smith Barney’s shareholders approved of the merger, that Lama faced substantial tax consequences if it participated in the merger, and that Smith Barney did not use its best efforts to permit Lama to sell its shares to a purchaser of Lama’s choice as required by the shareholder agreement.
 

 Plaintiffs contend that their breach of fiduciary duty claim is governed by Delaware law which authorized the claim made here. Under Delaware law, corporate officers, directors and controlling shareholders "owe their corporation and its minority shareholders a fiduciary obligation of honesty, loyalty, good faith and fairness”
 
 (Singer v The Magnavox Co.,
 
 380 A2d 969, 976,
 
 overruled on other grounds in Weinberger v UOP, Inc.,
 
 457 A2d 701). Delaware law imposes a duty upon corporations to disclose "all available material information when obtaining shareholder approval”
 
 (Cede & Co. v Technicolor, Inc.,
 
 634 A2d 345, 372). Only damages caused by the breach of fiduciary duty are compensable
 
 (Thorpe v Cerbco, Inc.,
 
 676 A2d 436). Plaintiffs argue that at the May 19, 1987 meeting, defendants’ misrepresentation of material facts concerning Smith Barney’s merger partner and the concomitant tax consequences to Lama of voting in favor of the merger, breached defendants’ fiduciary duty of disclosure.
 

 
 *424
 
 Plaintiffs do not allege how receipt by Lama of the undisclosed information prior to the May 19, 1987 meeting would have affected Lama’s tax consequences under the merger. At any rate, the undisclosed information was provided to all of Smith Barney’s shareholders, including plaintiffs, in the proxy material. Plaintiffs had all of the previously undisclosed material prior to casting their vote in favor of the merger. Therefore, Lama’s decision to vote in favor of the merger and take its approximately $90 million profit was an informed one and no breach of fiduciary duty was sufficiently pleaded here.
 

 Further, Rana and Rasha are not owed a fiduciary duty, as they are shareholders of Lama, which is itself a shareholder of Smith Barney
 
 (see, U-Haul Acquisition Co. v Barbo,
 
 1994 WL 34688 [Del Ch Ct] [decided Jan. 31, 1994] ["It is axiomatic that in order to maintain a claim for breach of fiduciary duty, a plaintiff must show that it was owed a fiduciary duty”]). Rana and Rasha also lack standing because they were neither purchasers nor sellers of Smith Barney stock. Since Rana and Rasha are shareholders of the Smith Barney shareholder, any injury to them is derivative. Moreover, as shareholders of Lama, Rana and Rasha cannot sue directly for injury to Lama
 
 (see, Abrams v Donati,
 
 66 NY2d 951 [shareholder has no standing to sue for wrong committed against corporation];
 
 Glenn v Hoteltron Sys.,
 
 74 NY2d 386). At any rate, Smith Barney owed no independent and separate duty to Rana and Rasha.
 

 Tortious Interference with Contract and Advantageous Business Relations
 

 Plaintiffs maintain in count four of the complaint that defendants have tortiously interfered with the performance of Lama’s contract and Lama’s advantageous business relationship with Bankers Trust. Tortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant’s knowledge of that contract, defendant’s intentional procurement of the third-party’s breach of the contract without justification, actual breach of the contract, and damages resulting therefrom
 
 (Israel v Wood Dolson Co.,
 
 1 NY2d 116, 120;
 
 see also, NBT Bancorp v Fleet/ Norstar Fin. Group,
 
 87 NY2d 614 [discussing the elements of tortious interference with contract and tortious interference with prospective business relations]).
 

 Plaintiffs charge that defendants’ actions and omissions during the May 19, 1987 meeting "wrongfully interfered with and frustrated the performance of plaintiff’s agreement” with
 
 *425
 
 Bankers Trust. There is, however, no allegation that Smith Barney intentionally procured Bankers Trust’s breach of its contract with Lama, nor that Bankers Trust in fact breached its contract to provide financial advice and represent Lama in the disposition of Lama’s Smith Barney stock.
 

 Breach of Contract
 

 In count five of the complaint, plaintiffs allege that Smith Barney, by its omissions and misrepresentations at the May 19, 1987 meeting, breached the parties’ June 1982 agreement. Specifically, plaintiffs argue that defendants breached the June 1982 agreement by obstructing or preventing Lama from selling its stock. The complaint, however, fails to allege any breach of the June 1982 agreement. Plaintiffs do not allege facts sufficient to support their claim that Smith Barney interfered with their efforts to obtain a bona fide offer for Lama stock. Furthermore, applying the law of New York (as provided in the agreement), plaintiffs’ damages claim must fail since it is not susceptible to proof with certainty but is instead entirely speculative (see,
 
 Kenford Co. v County of Erie,
 
 67 NY2d 257, 261).
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Titone, Levine and Ciparick concur; Judge Bellacosa taking no part.
 

 Order affirmed, with costs.