**800AMERICA, INC., Plaintiff,**

v.

**CONTROL COMMERCE, INC., MindArrow Systems, Inc., and Robin Esterson, Defendants.**

No. 01 Civ.1953 (JSR).

United States District Court, S.D. New York.

May 28, 2002.

Michael J. Calvey, Sokolow, Dunaud, Mercadier & Carreras, L.L.P., New York, NY, for 800Amercia, Inc.

James M. Altieri, Drinker, Biddle & Reath, L.L.P., New York, NY, for Control Commerce, Inc., John Does, 1 through 5.

Andrew J. Frackman, O'Melveny & Myers, L.L.P., New York, NY, for MindArrow Systems, Inc.

## MEMORANDUM

RAKOFF, District Judge.

By Order dated November 15, 2001, the Court granted the motion of co-defendant MindArrow Systems, Inc. ("Mind Arrow") for summary judgment in its favor. This Memorandum will briefly state the reasons for that ruling.[1]

The pertinent facts, either undisputed or, where disputed, taken most favorably to plaintiff 800America, Inc. ("800America") are as follows. Beginning as early as November, 2000, 800America was solicited to purchase defendant Control Commerce. Negotiations between the two companies eventually culminated in the execution of a

1. The Order of November 15, 2001, also dismissed, on consent, defendant Robin Esterson. Subsequently, plaintiff settled with defendant Control Commerce, Inc. ("Control Commerce"), and the case was closed on December 10, 2001.

term sheet dated January 5, 2001, with closing performed January 26, 2001. *See* Plaintiff's Rule 56.1 Statement at ¶¶ 4–13. Approximately an hour before the scheduled closing, however, Control Commerce's Chief Executive Officer, James Chard, informed 800America's Chief Executive Officer, Elie Rabi, that the deal was off because Control Commerce had received a better offer from another, unnamed suitor. *See id.* at ¶¶ 14–15. That same day, Control Commerce signed a term sheet with MindArrow. *See* Affirmation of Michael Calvey, dated August 24, 2001, ("Calvey Aff."), at Ex. 3.

Four days later (*i.e.,* on January 30, 2001), 800America filed suit in New York State Supreme Court against Control Commerce and Mind Arrow (at that point identified only as a "John Doe" defendant). *See* Calvey Aff., Ex.1. After the suit was removed to this Court, 800America filed its Amended Complaint alleging, as to MindArrow, claims of tortiously inducing Control Commerce's alleged breach of its contract with 800America and interfering with 800America's existing and prospective business relations.

With respect to the claim of tortiously inducing breach of contract, it is by no means clear that 800America and Control Commerce ever entered into a contract; that, rather, was presumably the purpose of the January 26, 2001 closing. But assuming *arguendo,* as plaintiff contends, that the January 5, 2001 term sheet was a contract, MindArrow adduced, in its summary judgment motion, competent evidence from both Control Commerce's C.E.O. Chard and its own C.E.O. Robert Webber that MindArrow was never informed, and had no knowledge, of the term sheet, or of Control Commerce's putative contractual arrangement with 800America, until after January 26, 2001, when Control Commerce withdrew from its "deal" with

800America and signed a term sheet with MindArrow. *See* Calvey Aff., Ex. 6, Deposition of Robert Webber ("Webber Dep."), at 16, 18, 20, and 30; *see also* Calvey, Aff. Ex. 3, Deposition of James Chard ("Chard Dep."), at 73–74, 80–81, and 99. Indeed, according to this testimony, MindArrow did not even know Control Commerce was in negotiations with 800America. *Id.* Despite substantial discovery, 800America has not adduced any competent evidence to contradict these assertions.

This is dispositive. To establish inducement of breach of contract, New York law requires, *inter alia,* that the alleged inducer have knowledge at the time of inducement of the contract in issue. *See Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996). Here, the plaintiff has failed to demonstrate that any such knowledge existed at the relevant time. The fact that, subsequently, as a result of plaintiff's lawsuit and other events, MindArrow learned of the alleged prior contract before closing its own acquisition of Control Commerce on May 18, 2001 is a complete irrelevancy, since, on January 26, 2001, Control Commerce had unequivocally cancelled its contractual relationship with 800America. *See Ediciones Quiroga, S.L. v. Fall River Music, Inc.,* 1995 U.S.Dist. LEXIS 8439, *4, 1995 WL 103842, *1 (S.D.N.Y.1995). Indeed, 800America clearly recognized as much, which is why it brought suit, four days later, on January 30, 2001, accusing Control Commerce of breach of contract.

Similarly, the failure of plaintiff to adduce any competent evidence that MindArrow knew about Control Commerce's negotiations with the plaintiff prior to the alleged breach is also dispositive of plaintiff's claims of tortious interference with existing or prospective business relations. Both these torts require intentional inter-

ference, Having no knowledge of the relations between 800America and Control Commerce until after those relations were terminated, MindArrow could not possibly have intentionally interfered with those relations, existing or prospective. *See Nadel v. Play–by–Play Toys & Novelties, Inc.,* 208 F.3d 368, 382 (2d Cir.2000) (prospective relations); *United Magazine Company v. Murdoch Magazines Distribution, Inc.,* 146 F.Supp.2d 385, 407–08 (S.D.N.Y. 2001) (existing relations).

Accordingly, for the foregoing reasons, the Court, by Order of November 15, 2001, granted MindArrow's motion for summary judgment.