OPINION OF THE COURT
Cynthia Kern, J.
Plaintiffs commenced the present action against defendants asserting claims for fraud and negligent misrepresentation. Defendants NRT Incorporated, NRT New York, Inc. doing business as the Corcoran Group, the Corcoran Group Eastside, Inc. doing business as the Corcoran Group, Inc., Elizabeth Spahr and Dorothy Zeidman (the NRT defendants) move for summary judgment dismissing the complaint as against them. For the reasons set forth below, the NRT defendants’ motion is granted.
The relevant facts are as follows. In 2005, plaintiffs purchased what they believed was a three-bedroom condominium apartment but what turned out to be a legal one-bedroom apartment from defendant Cynthia Rowley. Rowley had renovated the apartment in 1998 and converted it from its original one-bedroom configuration into a three-bedroom apartment. These renovations did not comply with the New York City Building Code because the windows of the two smaller bedrooms did not face a street or legal courtyard. Thus, the apartment is not a legal three-bedroom apartment although each of the bedrooms has a window and the plaintiffs continue to use these rooms as bedrooms.
Defendant Dorothy Zeidman, an employee of the Corcoran Group, was the listing broker for the apartment. Defendant Elizabeth Spahr, also an employee of the Corcoran Group, was the plaintiffs’ broker and was the selling agent for the apartment. The written advertising materials provided by the Corcoran Group for the apartment depicted it as a five-room, three-bedroom apartment. Defendant Zeidman alleges that she listed the apartment on the listing form as a three-bedroom apartment based upon information she received from the seller and her inspection of the apartment. Additionally, Zeidman, in Spahr’s presence, had said to plaintiffs that the apartment was a three-bedroom apartment. The listing contained the following disclaimer:
“All information furnished regarding property for sale, rental or financing is from sources deemed reliable, but no warranty or representation is made as *298 to the accuracy thereof and same is submitted subject to errors, omissions, change of price, or other conditions prior [to] sale, lease or financing or withdrawal without notice. All dimensions are approximate. For exact dimensions, you must hire your own architect or engineer.”
The NRT defendants state that they did not know that the apartment had been changed from a one-bedroom to a three-bedroom apartment when they made the written and oral representations to plaintiffs.
After viewing the apartment with Zeidman and Spahr, plaintiffs made an offer to purchase the apartment. Plaintiffs’ offer was accepted. After the offer was accepted but before plaintiffs signed a contract of sale, Zeidman sent to plaintiffs’ attorney the condominium offering plan documents which described the apartment as a one-bedroom residential loft apartment. The original floor plan depicting the apartment as a one-bedroom loft with a living room was included in the offering plan documents. Zeidman also sent the certificate of occupancy for the building, which described the permissible use and occupancy of the apartment as a one-room “Class A” apartment. Plaintiffs viewed the apartment six or seven additional times and then signed a contract of sale. Approximately three months after the plaintiffs and the seller signed the contract of sale, plaintiffs closed on the apartment. Plaintiffs admit that they never read the contract nor did they hire an architect, engineer or other professional to ensure that the physical layout of the apartment complied with that shown in the offering plan.
The NRT defendants made a previous motion for summary judgment, which was denied by Justice Ling-Cohan in Supreme Court, New York County. This denial was affirmed by the Appellate Division, First Department, on the grounds that summary judgment was premature as “no discovery had been conducted and questions of fact exist as to whether the brokers, individually and as agents for the seller, materially misrepresented the number of legal bedrooms in the unit and, if so, whether plaintiffs justifiably relied on such misrepresentations.” (Joseph v NRT Inc., 43 AD3d 312, 313 [1st Dept 2007].) The Appellate Division did hold that “[t]he general disclaimer clause in the contract of sale would not bar parol evidence, as there was no specific disclaimer in the contract regarding reliance on representations as to the legality of bedrooms.” (Id.) The Court went on to note, “Defendants are correct in contend *299 ing that they would not be liable for the alleged misrepresentation if the facts misrepresented were not matters peculiarly within their knowledge and plaintiffs had the means to discover the truth by the exercise of ordinary intelligence.” (Id.) However, the Court declined to grant summary judgment because nothing in the record at that point gave plaintiffs notice that the extra bedrooms were not legal. (Id.)
In order to make out a claim for fraud, plaintiffs must prove “a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury.” (Lama Holding Co. v Smith Barney, 88 NY2d 413, 421 [1996].) The Appellate Division has already held in this case that plaintiffs would not be justified in relying on any alleged misrepresentation by the NET defendants as to the amount of legal bedrooms “if the facts misrepresented were not matters peculiarly within [defendants’] knowledge and plaintiffs had the means to discover the truth by the exercise of ordinary intelligence.” (Joseph, 43 AD3d at 313.) In 1537 Assoc, v Kaprielian Enters. (259 AD2d 447 [1st Dept 1999]), the Appellate Division dismissed defendants’ counterclaim for fraud. The Court held that defendants could not have reasonably relied on plaintiff’s misrepresentation regarding the size of the premises to be rented because the dimensions of the premises were not within the plaintiffs peculiar knowledge as defendants could have measured the dimensions themselves. In Bennett v Citicorp Mtge., Inc. (8 AD3d 1050 [4th Dept 2004]), the Court granted summary judgment dismissing plaintiffs’ claims of fraud and negligent misrepresentation. The Court held that plaintiffs’ reliance on the representation of the listing agent as to the number of acres that were included in the sale of the property at issue was not reasonable since the seller’s “ownership of only five acres was a matter of public record, readily ascertainable from the abstract of title provided to plaintiffs’ attorney for her review prior to the closing” (at 1050). Similarly, in DiFilippo v Hidden Ponds Assoc. (146 AD2d 737 [2d Dept 1989]), the plaintiff claimed that the defendant sellers had fraudulently induced him into purchasing a townhouse by telling him that he would be able to rent out the unit when in fact the zoning regulations prohibited this. The Court granted summary judgment dismissing the complaint on the ground that “the plaintiffs failure to ascertain for himself the restrictions of the *300 Zoning Ordinance precludes his claim of fraudulent inducement” because the zoning ordinance “[was] not a matter peculiarly within the defendants’ knowledge and the plaintiff could have easily made inquiry as to whether it would permit him to rent the townhouse to a third party.” (Id. at 738.)
In the present case, the NRT defendants are entitled to summary judgment dismissing the fraud claim as they have established that plaintiffs were not reasonable in relying on their representations as to the number of bedrooms in the apartment as it was not a matter peculiarly within the NRT defendants’ knowledge and plaintiff had the means to “discover the truth by the exercise of ordinary intelligence.” (Joseph, 43 AD3d at 313.) Before plaintiffs entered into the contract of sale, the NRT defendants provided them with the offering plan for the condominium, the original floor plan for the apartment and the certificate of occupancy, all of which showed that the apartment was originally set up as a one-bedroom. The plaintiffs also viewed the apartment six or seven times before signing the contract. At this point, plaintiffs had as much information as the NRT defendants did about the fact that there were two extra bedrooms in the apartment which were not shown on the offering plan for the condominium. Although they chose not to, they could have hired an architect or an engineer to advise them regarding whether the increase in bedrooms was permitted under the relevant laws. In fact, the apartment listing contained a statement that all the dimensions provided were approximate and advised interested buyers to hire their own architect or engineer. Thus, the NRT defendants have shown that the information about the legality of the second and third bedroom was not within their “peculiar knowledge” and the plaintiffs were not justified in relying on the broker’s representation on this point. Accordingly, plaintiffs’ claim for fraud against the NRT defendants should be dismissed.
Plaintiffs’ reliance on 23 Realty Assoc. v Teigman (213 AD2d 306 [1st Dept 1995]) is misplaced. In that case, the issue before the court was whether residential leases were covered by the New York City Consumer Protection Law and if so whether the broker for the apartments could be liable for violating that law. The Court held that residential leases did come within the ambit of the Consumer Protection Law and that a broker could be held liable for violating that law by renting hotel rooms as apartments. The Court held that the broker could be liable even if the selling principal had represented that the building was an *301 apartment building because “[a] real estate broker should have a working knowledge of the legal status of the property he is marketing.” (Id. at 308.) In the present case, by contrast, plaintiffs are suing for fraud, not for a violation of the Consumer Protection Law, and the cases cited above govern.
Plaintiffs’ claim against the NET defendants for negligent misrepresentation should also be dismissed. In order to make out a claim for negligent misrepresentation, plaintiffs must demonstrate “that defendants] had a duty, based upon some special relationship with them, to impart correct information, that the information given was false or incorrect and that plaintiffs reasonably relied upon the information provided.” (Berger-Vespa v Rondack Bldg. Inspectors, 293 AD2d 838, 841 [3d Dept 2002].) Even if plaintiffs could demonstrate a special relationship with the NET defendants, for the reasons discussed above, plaintiffs cannot demonstrate that they reasonably relied on the NET defendants’ misrepresentations. (See Joseph, 43 AD3d at 313; Bennett, 8 AD3d at 1050; Hausler v Spectra Realty, 188 AD2d 722 [3d Dept 1992] [granting summary judgment dismissing claim for negligent misrepresentation against real estate broker where there was no evidence that broker knew about a defect in the septic system of the house even though broker had arranged for tests which showed that there were no problems in the septic system].)
Based on the foregoing, this action is dismissed as against the NET defendants.