**SOGETI USA LLC, Plaintiff–Counter–Defendant–Appellee,**

v.

**WHIRLWIND BUILDING SYSTEMS, INC., Defendant–Counterclaimant–Appellant.**

No. 06–3775–cv.

United States Court of Appeals, Second Circuit.

April 24, 2008.

Matthew L. Hoeg, Andrews Kurth LLP, Houston, TX, for Defendant–Counter-claimant–Appellant.

Gerald D. Silver, Winston & Strawn LLP, New York, NY, for Plaintiff–Counter–Defendant–Appellee.

PRESENT: Hon. JON O. NEWMAN, Hon. SONIA SOTOMAYOR, Hon. ROBERT A. KATZMANN, Circuit Judges.

### SUMMARY ORDER

Defendant-counterclaimant-appellant Whirlwind Building Systems, Inc. ("Whirlwind") appeals from a July 21, 2006 judgment of the United States District Court for the Southern District of New York (Holwell, J.), following a bench trial, finding Whirlwind in breach of contract and awarding plaintiff-counter-defendant-appellee Sogeti USA LLC ("Sogeti") contract damages and interest. The district court also dismissed Whirlwind's counterclaims of breach of contract, fraud, and negligent misrepresentation. When reviewing a district court's judgment after a bench trial, we review the district court's findings of fact for clear error and its conclusions of law de novo. *Grace v. Corbis–Sygma*, 487 F.3d 113, 118 (2d Cir.2007). We assume the parties' familiarity with the facts and procedural history of the case.

First, Whirlwind claims that Sogeti failed to prove that it performed the services for which it billed because Sogeti did not produce the employee timesheets upon which its invoices were based. However, the parties' Professional Services Agreement ("PSA") requires only that invoices be "based on Sogeti USA LLC timesheets." While Whirlwind had the right under the PSA's audit provision to request timesheets for a period of one year after submission of related invoices, it never did so. At trial, Sogeti representatives testified about work performed and further testified that they had contemporaneously reviewed employee timesheets. Under

these circumstances, we find no clear error in the district court's finding that Sogeti's invoices accurately reflected work performed or its award of damages based on the invoices.

■ Second, Whirlwind contends that the district court erred when it rejected Whirlwind's fraudulent inducement defense. To establish fraudulent inducement under New York law, Whirlwind must, among other things, "prove a misrepresentation or a material omission of fact which was false and known to be false by [Sogeti]." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996). Whirlwind claims that it entered the PSA and subsequent Statements of Work ("SOWs") based on Sogeti's false representations that: (1) it had the necessary expertise and experience to evaluate and select an Enterprise Resource Planning ("ERP") system; and (2) there were numerous ERPs that could perform "actual costing" of inventory when in fact no ERP could do so. The district court found that Sogeti made no false representations, in part based on the court's conclusion that "actual costs could have been tracked by [the Oracle ERP system], either by creating a so-called work-around or by customizing the Oracle system." We find no clear error in this determination, and thus agree with the district court's rejection of Whirlwind's fraudulent inducement defense.

■ Third, Whirlwind claims that the district court erred when it awarded contract damages for services performed by two subcontractors who Sogeti engaged without the prior written consent of Whirlwind, as required by the PSA. The district court concluded that, as a matter of law, the personnel in question were not subcontractors because Whirlwind did not subcontract to them any portion of the contract, but rather hired them as outside consultants to guide Sogeti employees in implementing the ERP system. This distinction is based more in semantics than in the language of the contract. The PSA plainly states that "work to be performed may not be delegated or subcontracted . . . without the prior express written consent of [Whirlwind]." Regardless of the label attached to the personnel, Sogeti delegated work to these two individual without the contractually required written consent and thus breached the agreement. Nevertheless, Whirlwind knew of and approved of the personnel in question, including their hourly billing rate, and accepted and benefitted from their services. Accordingly, Sogeti was entitled to be paid for their services in quantum meruit. *See Moors v. Hall*, 143 A.D.2d 336, 532 N.Y.S.2d 412, 414 (2d Dep't 1988) ("As a general rule, the performance and acceptance of services gives rise to the inference of an implied contract to pay for the reasonable value of such services." (citations omitted)).

■ Fourth, Whirlwind argues that the district court erred when it awarded contract damages for services performed by Sogeti employees who Whirlwind never expressly authorized under any SOW. The district court found, however, that Whirlwind's Chief Information Officer ("CIO") "knew of and approved the Sogeti personnel" whose services were in dispute. The district court based this finding on evidence presented at trial that the CIO reviewed and approved of the employees' resumes and that Whirlwind provided the employees with on-site office space and network connectivity. While Whirlwind is correct that each SOW lists the names of employees who will be working on an engagement, nothing in the PSA or any SOW indicates that Whirlwind had to approve in writing any additional employees joining an engagement, as it now contends. We

find no clear error in the district court's determination that Whirlwind knowingly accepted the services of the employees and thus should pay for their services.

■ Fifth, Whirlwind asserts that the district court erred when it awarded damages for services rendered after the interim SOW–3a expired on June 7, 2002. The district court found that Whirlwind, through its conduct, agreed that Sogeti would continue to work on the project from June 7 until June 13, when Whirlwind terminated Sogeti. The district court based this determination on testimony that the purpose of the "interim" SOW–3a was to "bridge from one project to another" and that Whirlwind's CIO requested that the team keep working until the next SOW was negotiated. In addition, the language of SOW–3a itself states that the agreement "is intended to be an interim document to facilitate continuous work on the project while both parties work in good faith to finalize" the next SOW. We find no clear error in the district court's finding based on the evidence that Whirlwind requested and accepted Sogeti's services during the time period in dispute and should be compensated for those services.

■ Sixth, Whirlwind claims that the district court erred when it applied to Sogeti's unpaid invoices the 1.5% monthly service charge mandated by the PSA because the rate was contrary to New York law as usurious. Under New York law, "[t]he rudimentary element of usury is the existence of a loan or forbearance of money." *Feinberg v. Old Vestal Road Assocs.*, 157 A.D.2d 1002, 550 N.Y.S.2d 482, 483 (3rd Dep't 1990). Because the monthly service charge does not constitute a loan or forbearance, *see F.K. Gailey Co. v. Wahl*, 262 A.D.2d 985, 692 N.Y.S.2d 563, 564 (4th Dep't 1999); *Waterbury v. City of Oswego*, 251 A.D.2d 1060, 674 N.Y.S.2d 530, 531 (4th Dep't 1998), the usury statute is inapplicable. In addition, Whirlwind, as a corporation, may not assert a usury defense under New York law. *See* N.Y. Gen. Oblig. Law § 5–521 ("No corporation shall hereafter interpose the defense of usury in any action."). Accordingly, the district court's application of the contractually agreed upon interest rate for late payments was proper.

■ Seventh, Whirlwind argues that the district court erred when it dismissed Whirlwind's counterclaim for negligent misrepresentation because it found no "special relationship" existed between the parties. To prevail in claiming that Sogeti engaged in negligent misrepresentation under New York law, Whirlwind must show that: (1) Sogeti had a duty of care to impart correct information due to a special relationship between the parties; (2) the information was false; and (3) Whirlwind reasonably relied on the information. *Fresh Direct, LLC v. Blue Martini Software, Inc.*, 7 A.D.3d 487, 776 N.Y.S.2d 301, 302 (2d Dep't 2004). "In the commercial context, 'liability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.' " *Id.* (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263, 652 N.Y.S.2d 715, 675 N.E.2d 450 (1996)). Because Whirlwind, which was entirely inexperienced with ERP systems, engaged Sogeti precisely because the latter had specialized experience in the field, a special relationship may have existed in this case. We need not, however, decide this issue as Whirlwind's negligent misrepresentation claim fails nonetheless because, as noted above, the district court found that Sogeti's representations concerning ERP systems were not false—a

determination that we conclude is not clearly erroneous.

Finally, we reject Whirlwind's contention that the district court failed to issue adequate and sufficient findings of fact for our review. *See Fair Housing in Huntington Comm. Inc. v. Town of Huntington,* 316 F.3d 357, 364 (2d Cir.2003).

For the foregoing reasons, the district court's judgment is AFFIRMED.