■ ULYSSES I & COMPANY, INC., Respondent, v GARY FELDSTEIN, Defendant, and PETER MORTON, Individually and as Trustee for the PETER MORTON LIFETIME TRUST, Defendant and Third-Party Plaintiff-Appellant. SHELDON SOLOW et al., Third-Party Defendants-Respondents. [906 NYS2d 380]—

Spain, J.P. Appeals (transferred to this Court by order of the Appellate Division, Second Department) (1) from a judgment of the Supreme Court (Sise, J.), entered May 15, 2008 in Suffolk County, upon a decision of the court in favor of plaintiff and third-party defendants, and (2) from an order of said court, entered January 2, 2009 in Suffolk County, which denied defendant Peter Morton's motion to vacate the judgment.

In October 1992, Jack Rounick began leasing his then residence in the Town of East Hampton, Suffolk County to defendant Gary Feldstein. Feldstein expressed interest in purchasing the property and, in May 1993, agreed to do so for $7 million. Their original contract of sale contemplated closing on or before October 1, 1997 and set forth a detailed schedule of periodic payments due in the interim. Subsequent amendments to that agreement, purportedly made at Feldstein's request, revised the payment schedule and extended the closing date to October 1, 1998. Despite the fact that Feldstein made all of the required payments, Rounick nonetheless became concerned about Feldstein's ability to close. According to Rounick, he was approached in June 1998 by third-party defendant Sheldon Solow, who suggested that Feldstein lacked the financial resources to fulfill the contract. Solow, in turn, introduced Rounick to third-party defendant Stuart Schlesinger, plaintiff's president, who met with Rounick in August 1998 and offered to purchase the property.

On August 10, 1998, Feldstein assigned his contractual right to purchase the property to defendant Peter Morton. Pursuant to the assignment agreement, Feldstein was not obligated to convey the premises to Morton but, rather, to use reasonable ef-

forts to cause Rounick to convey title to Morton at the closing.[1] Rounick, however, was convinced that Feldstein would be unable to close on their contract of sale and, on August 13, 1998, contracted to sell the property to plaintiff.[2] In executing that agreement, plaintiff acknowledged, among other things, that the contemplated conveyance was subject to Feldstein's then occupancy of the premises, as well as whatever rights Feldstein possessed pursuant to his contract with Rounick and the amendments thereto, and agreed to indemnify Rounick for any damages resulting from a breach of his contract with Feldstein.

By letter dated August 20, 1998, Feldstein's counsel advised Rounick of the assignment agreement with Morton and scheduled the closing for August 28, 1998. In the interim, however, Rounick conveyed the property to plaintiff, prompting Feldstein to commence an action for specific performance against Rounick and plaintiff. By judgment entered February 2, 2000, Supreme Court (D'Emilio, J.), among other things, granted Feldstein's cross motion for summary judgment and directed plaintiff to transfer the property to Feldstein. Plaintiff's subsequent appeals proved unsuccessful (*see Feldstein v Rounick*, 276 AD2d 523 [2000], *appeal dismissed* 95 NY2d 955 [2000], *lv denied* 96 NY2d 707 [2001]), as did the numerous actions and proceedings it thereafter commenced in various state and federal courts seeking to retain title to the property. Title finally was conveyed to Morton on October 10, 2001.[3]

Plaintiff thereafter commenced this action against Feldstein and Morton seeking, among other things, a declaration that the conveyance of the property to Morton was null and void. Morton counterclaimed against plaintiff and commenced a third-party action against Solow and Schlesinger alleging, insofar as is relevant here, tortious interference with contract and malicious prosecution and seeking an award of punitive damages.[4] Supreme Court (Jones Jr., J.), among other things, granted

---

1. In the event that Feldstein was unable to fulfill that obligation, Morton could either accept such title as could be delivered or terminate the assignment agreement and get his deposit back.

2. Solow apparently provided plaintiff with the money to fund this purchase.

3. Although Morton could have terminated the assignment agreement with Feldstein once title passed to plaintiff, Morton elected instead to subsequently amend the assignment agreement on four separate occasions extending their closing date. It appears that Morton began residing on the premises shortly after Rounick conveyed the property to plaintiff.

4. Although Morton purported to "counterclaim" against Solow and Schlesinger as well, they were not named defendants in the underlying action. Hence, we will treat Morton's counterclaim in this regard as a third-party complaint.

Feldstein's and Morton's respective motions to dismiss the amended complaint and denied Morton's cross motion for partial summary judgment on his counterclaims against plaintiff and his third-party claims against Solow and Schlesinger. Following a nonjury trial, Supreme Court (Sise, J.) dismissed Morton's claim for tortious interference with contract and denied his request for compensatory and punitive damages. These appeals ensued.

We affirm. To sustain a claim for tortious interference with contract, Morton needed to establish that he had a valid contract with Feldstein, that plaintiff, Solow and Schlesinger were aware of that contract and intentionally induced or procured an actual breach thereof and that he suffered damages as a result (*see Schmidt & Schmidt, Inc. v Town of Charlton*, 68 AD3d 1314, 1316 [2009]; *Pink v Half Moon Coop. Apts., S., Inc.*, 68 AD3d 739, 740 [2009]; *Clearmont Prop., LLC v Eisner*, 58 AD3d 1052, 1055 [2009]). Here, there is no question that there was a valid assignment agreement between Feldstein and Morton and that plaintiff, Solow and Schlesinger were well aware of the agreement's existence. However, even accepting that plaintiff, Solow and Schlesinger systematically charted a course designed to deprive Feldstein and/or Morton of the property, the fact remains that there was no breach of the Feldstein/Morton contract.

The assignment agreement between Feldstein and Morton did not require Feldstein to convey title to Morton; it simply required Feldstein to use reasonable efforts to persuade Rounick to do so. As Morton obtained title to the property in 2001 and was residing on the premises prior to that, there was no breach of the Feldstein/Morton contract and, hence, no cause of action for tortious interference with contract. To the extent that Morton contends that the substantial delay in obtaining title is tantamount to a breach, we need note only that the Court of Appeals has consistently held that an actual breach is required to sustain a cause of action for tortious interference with contract (*see Lama Holding Co. v Smith Barney*, 88 NY2d 413, 424 [1996]; *NBT Bancorp v Fleet/Norstar Fin. Group*, 87 NY2d 614, 620-621 [1996]; *Jack L. Inselman & Co. v FNB Fin. Co.*, 41 NY2d 1078, 1080 [1977]). Morton's claim that the delay here "otherwise render[ed] performance [of the Feldstein/Morton contract] impossible" (*Kronos, Inc. v AVX Corp.*, 81 NY2d 90, 94 [1993]) is equally unpersuasive. Accordingly, Supreme Court properly dismissed this cause of action.

Morton next contends that he is entitled to damages on his

malicious prosecution claim,[5] which essentially seeks to recover legal fees and other expenses paid in connection with his defense of separate actions commenced by plaintiff in the United States District Courts for the Eastern and Southern Districts of New York. Supreme Court denied relief as to the Eastern District action due to Morton's failure to prove "special injury" and, as to the Southern District action, found that Morton failed to identify the legal fees incurred in the defense thereof. Our review of the record supports Supreme Court's findings. As to the Eastern District action, because the notice of pendency was filed *after* that action was dismissed, it was void ab initio (*see* CPLR 6511 [a]) and, hence, could not form the basis for a finding of any special injury (*see generally Dudick v Gulyas*, 277 AD2d 686, 688 [2000]). We reach a similar conclusion regarding Morton's asserted damages arising from plaintiff's alleged misconduct during the course of the various lawsuits brought in connection with the property. As to the Southern District action, we agree with Supreme Court that Morton could not justify certain claimed costs incurred and failed to identify, through either documentary or testimonial evidence, the legal expenses incurred in that particular action. Although the record indeed contains a large number of canceled checks bearing the notation "legal fees," there are no corresponding invoices and neither Morton nor counsel testified as to the nature of the fees incurred, the services rendered or the reasonableness thereof—despite having ample opportunity to do so. Under these circumstances, we cannot say the Supreme Court erred in denying Morton's request for compensatory damages.

Finally, as Morton "failed to prove the damages that he allegedly sustained, he was not entitled to recover compensatory or punitive damages" (*Wenger v Alidad*, 265 AD2d 322, 323 [1999], *lv denied* 94 NY2d 758 [2000]; *see Hubbell v Trans World Life Ins. Co. of N.Y.*, 50 NY2d 899, 901 [1980]) and, there being no basis upon which to award damages against plaintiff, Morton's claims against Solow and Schlesinger must also fail.

Morton's remaining contentions, including his assertion that Supreme Court erred in denying his motion to vacate, have been examined and found to be lacking in merit.

Lahtinen, Stein, McCarthy and Garry, JJ., concur. Ordered that the judgment and order are affirmed, without costs.

---

**5.** Morton does not challenge in his brief Supreme Court's denial of damages on his abuse of process claim.