Michael P. Schulhof, as Executor of the Estate of Hannelore B. Schulhof, Plaintiff,

against
Lisa Jacobs, individually and doing business as LISA JACOBS FINE ART, Defendant.

LISA JACOBS, individually and doing business as LISA JACOBS FINE ART,Third-Party Plaintiff,
against
LAWRENCE OH, THE SCHULHOF COLLECTION LLC, MICHAEL P. SCHULHOF, Individually and as Manager of THE SCHULHOF COLLECTION LLC, and the CITY OF NEW YORK,Third-Party Defendants.

157797/2013

WARSHAW BURSTEIN, LLP
555 Fifth Avenue
New York, New York 10017
BY: ROBERT FRYD and AVI LEW
Attorneys for Plaintiff 
Nicholas Goodman & Associates, PLLC 
30 w. 22nd Street, Suite 2E
New York, NY 10010
BY: CARTER A. REICH, H. NICHOLAS GOODMAN, PATRICK L. SELVEY, JR.
Attorneys for Defendant LISA JACOBS, Individually and doing business as LISA JACOBS FINE ART


Charles E. Ramos, J.

In motion sequence 007, plaintiff Michael Schulhof ("Mr. Schulhof"), acting as executor of the estate of Hannelore B. Schulhof ("Mrs. Schulhof") moves pursuant to CPLR 3212 for summary judgment against defendant Lisa Jacobs ("Jacobs") in the amount of $1,050,000, plus [*2]interest, punitive damages, and attorneys' fees in an amount to be determined.
For the reasons set forth below, the Court grants the motion for summary judgment, in part.
Background
According to the Complaint, Mr. Schulhof, a resident of the State of New York, is the executor of the estate of his deceased mother, Mrs. Schulhof (Complaint ¶¶ 1-2). Jacobs, a resident of the State of New York, works as a private curator and art consultant, often providing art advice to potential buyers and sellers of modern art (Id. at ¶¶ 3-4).
From 1998 until Mrs. Schulhof's passing on February 23, 2012, Jacobs has worked as a curator and advisor for the art collection owned by Mrs. Schulhof (the "Schulhof Collection")(Id. at ¶ 5). During this time, Jacobs also ran her own business, Lisa Jacobs Fine Art ("LJFA"), where she bought and sold art and worked as a curator and advisor (See Jacobs Aff. ¶6).
On October 25, 2011, Mr. Schulhof and Jacobs entered into a written agreement ("October Agreement"), wherein Jacobs was to locate a buyer for a painting in the Schulhof Collection entitled "Future Sciences Versus the Man" by Jean-Michel Basquiat (the "Work") for a minimum purchase price of $6 million in exchange for a $50,000 fee. Mr. Schulhof maintains that he entered into the October Agreement on behalf of Mrs. Schulhof in his capacity as executor (See Schulhof Reply Aff., ¶1).
Pursuant to the October Agreement, Jacobs would receive a $50,000 fee upon commission of a final sale. The October Agreement provided that Jacobs was "not to accept any fee from the purchaser, in cash or in kind" (See Fryd Aff., Ex. H, P. No.1). The October Agreement also provided that Defendant was to contact Mr. Schulhof prior to approaching any prospective purchaser (Id.). Further, according to the October 2011 Agreement, Jacobs was prohibited from presenting or seeking purchase offers below $6 million without written confirmation of a lower price (Id.).
Jacobs alleges that prior to the October Agreement, she and Mrs. Schulhof had entered into a separate agreement that entitled her to receive a "buyers premium." However, Jacobs has not set forth any admissible concrete evidence supporting the existence of this agreement.
On November 1, 2011, Jacobs met with Amy Wolf ("Wolf"), an art dealer, to discuss the sale of the Work. Jacobs informed Wolf that the asking price for the Work was $6.5 million (Ex. S; Transcript of Deposition of Wolf, Ex. T, 42:16-23). By November 2, 2011, Jacobs and Wolf reached an agreement for the sale of the Work for $6.5 million (Schulhof Aff. ¶¶ 25-28). According to Wolf's deposition testimony, Jacobs presented $6.5 million as the asking price, and Wolf readily accepted it (See Pls. Memo of Law in Opp., Ex. 10, ¶¶ 7-9).
Shortly thereafter, on November 4, 2011, Wolf invited Jacobs to send her an invoice for the Work. The next day, on November 5, 2011, Jacobs informed Mr. Schulhof that she had a potential purchaser for the Work.
On November 7, 2011, Jacobs informed Mr. Schulhof by email that she "was able to get the [buyer] up to 5.5 million. We have a firm deal"("November Email")(Ex. J to Pls. Memo). As a result, Mr. Schulhof agreed to accept $5.5 million as the purchase price for the Work. Jacobs suggested that the transaction be structured as a two-step process, stating that the buyer wanted to remain anonymous. Honoring such request, Mr. Schulhof sold the Work to Jacobs for $5,450,000, and Jacobs was to immediately resell it to Wolf for a purported $5.5 million. 
On November 11, 2011, Jacobs executed a contract with Wolf, to sell Wolf the Work for $6,500,000 ("November Agreement") (See Fryd Aff., Ex. 1). Section 2.1 of the November Agreement provides that the agent has "all requisite power and authority to enter into this Agreement and consummate the transactions contemplated hereby" (Id. at § 2.1). Additionally, Section 2.2 of the November Agreement provides, in relevant part, that "the [a]gent on behalf of the Seller has full right, authority, power and capacity to execute and deliver this Agreement" (Id. at § 2.2).
After receiving the $6.5 million purchase price from Wolf, Jacobs wired $5,450,000 to Mr. Schulhof on November 16, 2011 (See Complaint ¶ 17). It is undisputed that Mr. Schulhof was never informed that Jacobs received a profit of $1 million in connection with the sale of the Work or that the buyer had accepted the $6.5 million offer (See Pl. Mov. Aff at ¶ 15).
Approximately one year later, Mr. Schulhof discovered that the purchase price for the Work was actually $6.5 million and that Jacobs kept not only her agreed $50,000 but also an additional $1 million from the sale of the Work.
On August 26, 2013, Mr. Schulhof commenced the instant action asserting causes of action for breach of fiduciary duty, fraud, breach of contract, restitution, and unjust enrichment. The complaint seeks compensatory damages in excess of $1 million as well as punitive damages.
The parties have engaged in discovery, and depositions and fact discovery are complete.
Mr. Schulhof filed the instant motion for summary judgment and Jacobs cross-moved for summary judgment.
Discussion
Mr. Schulhof moved for summary judgment on the grounds that there are no genuine issues of material fact as to his fraud, breach of contract, breach of fiduciary duty, restitution, and unjust enrichment claims due to Jacob's misrepresentation that the purchase price was $5.5 million, thereby allowing her to wrongfully obtain an additional $1 million in commission.
In opposition, Jacobs cross-moved for summary judgment to dismiss the complaint, alleging that Mr. Schulhof failed to comply with provisions of the power of attorney ("POA") and New York's General Obligations Law § 5-1507 and that no fiduciary relationship exists between Jacobs and Mrs. Schulhof.
To prevail on a summary judgment motion, the moving party must sufficiently establish the cause of action or defense, warranting the court to direct judgment as a matter of law (CPLR 3212[b]). The opposing party must demonstrate material issues of fact requiring a trial (Klapper v Wang Laboratories, Inc., 165 AD2d 693, 694 [1st Dept 1990]).
In an action to recover damages for fraud, a plaintiff must establish "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury" (Lama Holding Co. v Smith Barney, 88 NY2d 413, 422 [1996]).
The record is clear that Jacobs misrepresented that the buyer was only willing to pay $5.5 million for the Work with knowledge that the buyer was actually willing and ready to pay $6.5 million. Mr. Schulhof has sufficiently established that Jacobs made such representations to induce him into accepting the $5.5 million purchase price, and Mr. Schulhof reasonably relied on such representation in deciding to sell the Work. This Court also finds that there is no triable [*3]issue of fact as to the damages, as it is clear that Mr. Schulhof was damaged in the amount of approximately $1 million due to Jacobs' fraud. As such, Jacobs's failure to disclose said fact constitutes actionable fraud, entitling Mr. Schulhof to summary judgment in his favor.
The Court also finds that Jacobs misrepresented that the purchase price was for $5.5 million and that she had gotten the confidential buyer "up to" $5.5 million, thereby leading Mr. Schulhof to reasonably believe that Jacobs had pushed the undisclosed buyer as high as she could (See Schulhof Mov. Aff, ¶ 27). Given Jacobs and Mrs. Schulhof's longstanding business relationship combined with the terms of the October Agreement, Jacobs owed a fiduciary duty to Mr. Schulhof as executor, thereby obligating her to disclose the $6.5 million offer prior to entering into the November Agreement (EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005]).
Furthermore, Jacob's actions and misrepresentations were in direct breach of the October Agreement, which obligated Jacobs to notify Mr. Schulhof of all purchase offers above $6 million and prohibited Jacobs from receiving a fee of any kind from the purchaser, which would include the additional $1 million in commission she fraudulently obtained (See Fryd, Reply Aff. ¶ 39). Jacobs' failure to abide by the terms of the October Agreement and the resulting damages of $1 million warrants the conclusion that Mr. Schulhof has sufficiently established his breach of contract claim, in the event that it would be necessary for this Court to rule on the contract formation issues (Harris v Seward Park Housing Corp., 79 AD3d 425, 426 [1st Dept 2010]) . Given our decision on the other causes of action, such determination need not be made.
As to Mr. Schulhof's restitution claim, Jacobs, as a faithless servant, must account to Mr. Schulhof for the $1 million of secret profits earned for the sale of the Work (Epstein Engineering P.C. v Cataldo, 101 AD3d 552 [1st Dept 2012]). Additionally, Jacobs' disloyalty to Mr. Schulhof causes her to forfeit the $50,000 in compensation earned for the sale of the Work (Visual Arts Found., Inc. v Egnasko, 91 AD3d 578 [1st Dept 2012]). 
The Court will not evaluate the merits of Mr. Schulhof's unjust enrichment claim as it is duplicative of Mr. Schulhof's breach of contract claims (New York City Educational Const. Fund v Verizon new York Inc., 114 AD3d 529, 532 [1st Dept 2014]).
In light of the fact that Mr. Schulhof has not asserted an individual claim, all findings in his favor shall inure to the benefit of the Estate.
Accordingly, it is
ORDERED that Plaintiff's motion for summary judgment is granted in part; and it is further
ORDERED that Defendants' motion for summary judgment is denied in all respects; and it is further
ORDERED that the clerk of this Court is hereby directed to enter judgment in favor of the plaintiff in the sum of $1,050,000 with together with interest from November 16, 2011, costs and disbursements.
Dated: February 27, 2017
ENTER:
_________________
J.S.C.