United Natural Foods, Inc. v Goldman Sachs Group (2021 NY Slip Op 00276)





United Natural Foods, Inc. v Goldman Sachs Group


2021 NY Slip Op 00276


Decided on January 19, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 19, 2021

Before: Webber, J.P., Mazzarelli, González, Scarpulla, Shulman, JJ. 


Index No. 652185/19 Appeal No. 12886 Case No. 2020-02490 

[*1]United Natural Foods, Inc., Plaintiff-Appellant,
v
Goldman Sachs Group, Inc., et al., Defendants-Respondents.


Quinn Emanuel Urquhart & Sullivan, LLP, New York (David M. Cooper of counsel), for appellant.
Cravath, Swaine & Moore LLP, New York (Michael A. Paskin of counsel), for respondents.



Order, Supreme Court, New York County (Andrea Masley, J.), entered on or about May 6, 2020, which, insofar as appealed from as limited by the briefs, granted defendants' motion to dismiss as to the breach of contract claim related to marketing period fees, the breach of the implied covenant of good faith and fair dealing claim insofar as related to the flex provisions, and the fraud claim, unanimously affirmed, without costs.
The breach of contract claim was properly dismissed because both contractual conditions to charging marketing period fees were satisfied.
First, the acquisition closed prior to completion of the marketing period, which began when nonparty Supervalu Inc. filed its second-quarter financial statement on October 15, 2018. The commitment letter is clear that the marketing period was to commence upon delivery of certain specified financial statements, including Supervalu's statements for each fiscal quarter "ended at least 40 days before the Closing Date." As such, once the closing date was set for October 22, 2018, it was clear that the marketing period could not begin until Supervalu delivered its financial statement for the last quarter ending before September 12, 2018 (40 days prior) — i.e., the second quarter, which ended September 8th.
Second, it is undisputed that syndication was not complete by the date of closing. Plaintiff argues that this was due to defendants' failure to act in good faith to complete syndication, as required by the agreements. However, defendants were under no obligation to syndicate at all, let alone to employ any particular level of effort in doing so. Rather, their obligation was to fund the loan, and they merely "reserve[d] the right" to syndicate all or part of that commitment in order to decrease their own credit risk. Plaintiff cannot use the implied covenant of good faith and fair dealing to create an obligation to syndicate (see Fesseha v TD Waterhouse Inv. Servs., 305 AD2d 268, 268 [1st Dept 2003]).
The breach of the implied covenant of good faith and fair dealing claim was sufficiently distinct from the breach of contract claim to survive dismissal, at least as limited on appeal. However, this claim was nonetheless properly dismissed as conclusory and insufficiently alleged. To the extent it was based on defendants' failure to make sufficient efforts to syndicate the loan, it was also inconsistent with the agreements for the reasons stated above.
The fraud claim was properly dismissed because plaintiff did not sufficiently plead justifiable reliance (see generally ACA Fin. Guar. Corp. v Goldman, Sachs & Co., 25 NY3d 1043 [2015]; Global Mins. & Metals Corp. v Holme, 35 AD3d 93, 99-100 [1st Dept 2006], lv denied8 NY3d 804 [2007]). Plaintiff could have asked follow-up questions regarding what kind of an effect making Supervalu a coborrower would have and on which "select accounts," but did not do so. Plaintiff also failed to insist on a final list of investors prior to closing, even though [*2]it is undisputed that plaintiff had the contractual right to do so to facilitate exercise of its right to veto investors. Defendants' failure to provide such a list was a red flag that triggered a need to make additional inquiries, including with respect to whether any proposed investors had adverse interests to plaintiff.
Plaintiff's damages allegations were also unduly speculative (see generally Lama Holding Co. v Smith Barney, 88 NY2d 413, 421-422 [1996]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 19, 2021