TUSCAN/LEHIGH DAIRIES, INC., Appellant, v BEYER FARMS, INC., Defendant/Third-Party Plaintiff-Respondent. DEAN FOODS COMPANY, Third-Party Defendant-Appellant. [26 NYS3d 115]—

In an action, inter alia, to recover damages for breach of contract, (1) the plaintiff and the third-party defendant appeal, as limited by their brief, from so much of an order of the Supreme Court, Queens County (Kitzes, J.), dated June 7, 2013, as denied that branch of their motion which was pursuant to CPLR 3211 (a) (1) and (7) to dismiss the defendant/third-party plaintiff's counterclaims and the third-party complaint, and (2) the plaintiff appeals from an order of the same court dated October 8, 2013, which denied that branch of its motion which was for summary judgment on the complaint.

Ordered that the order dated June 7, 2013, is reversed insofar as appealed from, on the law, and that branch of the motion of the plaintiff and the third-party defendant which was pursuant to CPLR 3211 (a) (1) and (7) to dismiss the defendant/third-party plaintiff's counterclaims and the third-party complaint is granted; and it is further,

Ordered that the order dated October 8, 2013, is modified, on the law, by deleting the provision thereof denying that branch of the plaintiff's motion which was for summary judgment on the issue of liability, and substituting therefor a provision granting that branch of the motion; as so modified, the order dated October 8, 2013, is affirmed; and it is further,

Ordered that one bill of costs is awarded to the plaintiff and the third-party defendant.

The plaintiff, Tuscan/Lehigh Dairies, Inc. (hereinafter Tuscan), sold its New York wholesale milk and dairy product distribution business to the defendant/third-party plaintiff, Beyer Farms, Inc. (hereinafter Beyer). In connection with this transaction, Tuscan and Beyer entered into a distribution agreement (hereinafter the distribution agreement), wherein Tuscan agreed to supply Beyer with milk and milk products for resale, and to license Beyer to sell those products using Tuscan's trademarks. In exchange, Beyer executed a promissory note, agreed to pay Tuscan a monthly fee, and agreed to pay for the milk and the milk products that it purchased from Tuscan. Beyer also granted Tuscan a security interest in its personal property, including its accounts, inventory, equipment, and fixtures.

Beyer allegedly defaulted on its payment obligations under the distribution agreement and on the promissory note by failing to make timely payments. Tuscan, and Tuscan's corporate parent, the third-party defendant, Dean Foods Company (hereinafter Dean), sent notices of default to Beyer on February 20, 2012, July 23, 2012, and August 29, 2012 which stated that Beyer was in default under the distribution agreement because it had failed to remit payments. On September 28, 2012, Tuscan and Dean sent another notice of default to Beyer, stating that Beyer had failed to timely remit payment, and that Beyer was in default under section 18 (c) of the distribution agreement. Tuscan continued to supply Beyer with milk and dairy products until December 6, 2012, when Tuscan sent notice to Beyer that the distribution agreement was terminated, effective immediately, due to Beyer's payment defaults. Dean contacted Beyer's retail customers, and informed those customers that Tuscan was exercising its right to direct them, as account debtors of Beyer, to make payment directly to Tuscan of any amounts they owed to Beyer.

Tuscan commenced this action against Beyer to recover damages for breach of contract and to recover chattels subject to a security interest. Beyer asserted two counterclaims against Tuscan to recover damages for breach of contract and breach of the implied duty of good faith and fair dealing, alleging that Tuscan had improperly terminated the distribution agreement and refused to release holds on Beyer's accounts receivable. Beyer also commenced a third-party action against Dean, alleging that Dean had tortiously interfered with Beyer's contracts with its customers by, inter alia, attempting to secure another distributor for them. Tuscan moved for summary judgment on the complaint, and Tuscan and Dean moved pursuant to CPLR 3211 (a) (1) and (7) to dismiss the counterclaims asserted against Tuscan and the third-party complaint asserted against Dean. The Supreme Court denied the motions, and Tuscan and Dean appeal.

The parties agree that, in accordance with a choice of law provision in the distribution agreement, Delaware law governs "all claims and controversies arising" out of the agreement, "including claims for breach of contract and related causes of action."

The Supreme Court should have granted that branch of Tuscan's and Dean's motion which was to dismiss Beyer's counterclaim to recover damages for breach of contract. "A judicial interpretation of a contract presents a question of law" (*Alta Berkeley VI C.V. v Omneon, Inc.*, 41 A3d 381, 385 [Del

2012]). "Unless there is ambiguity, Delaware courts interpret contract terms according to their plain, ordinary meaning" (*id.* at 385; *see E.I. du Pont de Nemours & Co. v Allstate Ins. Co.*, 693 A2d 1059, 1061 [Del 1997]). A court interpreting a contractual provision must give effect to all terms of the agreement, must read the agreement as a whole, and, if possible, reconcile all the provisions of the agreement (*see Alta Berkeley VI C.V. v Omneon, Inc.*, 41 A3d at 385; *Kuhn Constr., Inc. v Diamond State Port Corp.*, 990 A2d 393, 396-397 [Del 2010]). Here, the Supreme Court erred in determining that section 18 (c) and section 18 (e) of the distribution agreement did not provide independent grounds for Tuscan to terminate the distribution agreement if Beyer failed to timely make payments. The grounds for termination were set forth in eight subsections under section 18, and Tuscan could properly terminate the distribution agreement under section 18 (c) without reference to the requirements for termination under section 18 (e) (*see Bickling v Kent Gen. Hosp., Inc.*, 1995 WL 360753, 1995 US Dist LEXIS 8389 [D Del, June 13, 1995, No. 93-334 (MMS)]). Additionally, contrary to Beyer's assertion, section 18 (c) clearly and unambiguously did not require Tuscan to provide Beyer with commercially reasonable notice of termination if Beyer was in default on its payment obligations (*see Martin Marietta Materials, Inc. v Vulcan Materials Co.*, 68 A3d 1208, 1225-1226 [Del 2012]; *Alta Berkeley VI C.V. v Omneon, Inc.*, 41 A3d at 385; Del Code Ann, tit 6, § 2-309 [3]). While section 18 (c) did not provide Tuscan with the right to terminate the distribution agreement immediately upon payment default or service of notice of default, it granted Tuscan the right to terminate the distribution agreement after it served notice of default and granted Beyer five days to cure the default. There is no dispute that Tuscan served its last notice of default on September 28, 2012, and that it did not terminate the distribution agreement until December 6, 2012, and Beyer does not allege that it cured its payment default within the applicable five-day period. Accordingly, the Supreme Court erred in denying that branch of Tuscan's and Dean's motion which was to dismiss Beyer's counterclaim to recover damages for breach of contract.

The Supreme Court also should have granted that branch of Tuscan's and Dean's motion which was to dismiss Beyer's counterclaim to recover damages for breach of the duty of good faith and fair dealing. The implied covenant of good faith and fair dealing " 'requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiv-

ing the fruits of the bargain' " (*Alliance Data Sys. Corp. v Blackstone Capital Partners v L.P.*, 963 A2d 746, 770 [Del Ch 2009], *affd* 976 A2d 170 [Del 2009], quoting *Dunlap v State Farm Fire & Cas. Co.*, 878 A2d 434, 442 [Del 2005]; *see Nationwide Emerging Mgrs., LLC v Northpointe Holdings, LLC*, 112 A3d 878, 896 [Del 2015]). "In order to plead successfully a breach of an implied covenant of good faith and fair dealing, the plaintiff must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff" (*Fitzgerald v Cantor*, 1998 WL 842316, *1, 1998 Del Ch LEXIS 212, *4 [Nov. 10, 1998, No. CA 16297]). The implied covenant "cannot be employed to impose new contract terms that could have been bargained for but were not" (*Blaustein v Lord Baltimore Capital Corp.*, 84 A3d 954, 959 [Del 2014]). Here, Beyer failed to state a cause of action to recover damages for breach of the implied covenant of good faith and fair dealing. A claim of breach of the implied covenant of good faith and fair dealing cannot be based upon conduct authorized by the parties' contract, and Tuscan was permitted to terminate the distribution agreement under section 18 (c) without providing commercially reasonable notice (*see Nationwide Emerging Mgrs., LLC v Northpointe Holdings, LLC*, 112 A3d at 896; *Dunlap v State Farm Fire & Cas. Co.*, 878 A2d at 441; *Phunware, Inc. v Excelmind Group Ltd.*, 2015 WL 4606668, *9, 2015 US Dist LEXIS 99993, *25-26 [D Del, July 30, 2015, No. 15-216-SLR]). The Supreme Court erred in determining that further discovery on this issue was needed. Tuscan's motivation in terminating the distribution agreement is irrelevant when it had the contractual right to do so (*see Daystar Constr. Mgt., Inc. v Mitchell*, 2006 WL 2053649, *10, 2006 Del Super LEXIS 286, *37-40 [July 12, 2006, No. 04C-05-175-JRS]; *Gilbert v El Paso Co.*, 490 A2d 1050, 1055 [Del Ch 1984], *affd* 575 A2d 1131 [1990]). Moreover, even if, as Beyer alleges, Tuscan refused to release holds on Beyer's outstanding accounts receivable, upon Beyer's default, Tuscan was entitled to contact Beyer's account debtors and to direct them to make payment directly to Tuscan of any amounts they owed to Beyer (*see* Del Code Ann, tit 6, § 9-607).

The Supreme Court should have granted that branch of Tuscan's and Dean's motion which was to dismiss the third-party claim alleging that Dean tortiously interfered with Beyer's contracts with its customers. Under New York law, which we apply because the tortious interference claim does not arise out of the agreement, " '[t]ortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that

contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom' " (*Brooklyn Historic Ry. Assn. v City of New York*, 126 AD3d 837, 840-841 [2015], quoting *Lama Holding Co. v Smith Barney*, 88 NY2d 413, 424 [1996]). The third-party complaint failed to adequately allege that any of Beyer's customers actually breached their contracts with Beyer as a result of Dean's actions (*see Lama Holding Co. v Smith Barney*, 88 NY2d at 424-425; *Brooklyn Historic Ry. Assn. v City of New York*, 126 AD3d at 841; *Katzap v Knickerbocker Vil., Inc.*, 100 AD3d 423, 425 [2012]). Additionally, even if Dean had attempted to secure another third-party distributor for Beyer's customers, the distribution agreement authorized Tuscan, Dean's subsidiary, to contact Beyer's customers after the distribution agreement was terminated to ensure that they were provided with an uninterrupted supply of milk through other third-party distributors. Accordingly, Beyer failed to state a cause of action against Dean to recover damages for tortious interference of its contracts with its customers.

The Supreme Court should have granted that branch of Tuscan's motion which was for summary judgment on the issue of liability on Tuscan's claims for breach of contract and recovery of chattels. Under Delaware law, to establish a claim for breach of contract, a plaintiff must provide evidence demonstrating: (1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) a resulting damage to the plaintiff (*see VLIW Tech. LLC v Hewlett-Packard Co.*, 840 A2d 606, 612 [Del 2003]; *H-M Wexford LLC v Encorp, Inc.*, 832 A2d 129, 140 [Del Ch 2003]). Tuscan established its prima facie entitlement to judgment as a matter of law on the issue of liability on its breach of contract cause of action by submitting the distribution agreement, the promissory note, and evidence of Beyer's payment defaults (*see Newport Disc, Inc. v Newport Elecs., Inc.*, 2013 WL 5797350, *3, 2013 Del Super LEXIS 436, *10 [Oct. 7, 2013, No. N12C-10-228 (MMJ/CCLD)]).

Tuscan also established its prima facie entitlement to judgment as a matter of law on the issue of liability on its cause of action for recovery of chattels subject to a security interest. Tuscan submitted evidence demonstrating that it had a perfected security interest in, inter alia, Beyer's accounts, inventory, equipment, and fixtures, and upon Beyer's payment default, Tuscan was entitled to reduce its claim to judgment foreclosing on that collateral (*see* Del Code Ann, tit 6, § 9-601 [a] [1]).

However, Tuscan failed to demonstrate its prima facie entitlement to an award of damages in a specific amount. The affidavit that Tuscan submitted in support of its motion for summary judgment was based upon electronic billing records maintained on behalf of Tuscan, and a summary of those records. The electronic billing records failed to reflect any money Tuscan received from Beyer's account debtors in partial satisfaction of the amount that Beyer owed to Tuscan. Accordingly, Tuscan only established its prima facie entitlement to judgment as a matter of law on the issue of liability on its claims for breach of contract and recovery of chattels.

In opposition, Beyer failed to raise a triable issue of fact as to whether it was in default on its payment obligations under the terms of the distribution agreement or on the promissory note, and as to whether Tuscan had a perfected security interest in Beyer's personal property.

Beyer also failed to raise a triable issue of fact on its affirmative defense of waiver. Under Delaware law, contractual requirements and conditions may be waived, but the standards for proving waiver are "quite exacting" (*see Amirsaleh v Board of Trade of City of N.Y., Inc.*, 27 A3d 522, 529 [Del 2011]; *AeroGlobal Capital Mgt., LLC v Cirrus Indus., Inc.*, 871 A2d 428, 445 [Del 2005]). Waiver is an intentional relinquishment of a known right, that "implies knowledge of all material facts and an intent to waive, together with a willingness to refrain from enforcing those contractual rights" (*AeroGlobal Capital Mgt., LLC v Cirrus Indus., Inc.*, 871 A2d at 444). Contrary to Beyer's contention, Tuscan did not waive its right under the distribution agreement to timely payment from Beyer. The distribution agreement provides, in relevant part, that "[n]o delay or omission by either party hereto in exercising any right or power hereunder will impair such right or power or be construed to be a waiver thereof. A waiver by either party hereto of any of the covenants to be performed by the other or any breach thereof will not be construed to be a waiver of any succeeding breach thereof or of any other covenant herein contained." Moreover, Tuscan explicitly reserved its right to pursue all legal and equitable remedies under the distribution agreement in each payment default notice that it sent to Beyer. Accordingly, Beyer failed to raise a triable issue of fact as to whether Tuscan intended to waive its right to timely payment under the distribution agreement (*see Phunware, Inc. v Excelmind Group Ltd.*, 2015 WL 4606668, *7-8, 2015 US Dist LEXIS 99993, *18-22; *Pegasus Dev. Corp. v Hane*, 2007 WL 2844878, *4-6, 2007 US Dist LEXIS 72535, *13-19 [ED Pa,

Sept. 27, 2007, No. 05-6148]; *In re Mobilactive Media, LLC*, 2013 WL 297950, *12 n 152, 2013 Del Ch LEXIS 26, *38 n 152 [Jan. 25, 2013, No. 5725-VCP]; *Central Mtge. Co. v Morgan Stanley Mtge. Capital Holdings LLC*, 2012 WL 3201139, *26, 2012 Del Ch LEXIS 171, *98-102 [Aug. 7, 2012, No. 5140-CS]; *Seidensticker v Gasparilla Inn, Inc.*, 2007 WL 1930428, *6, 2007 Del Ch LEXIS 89, *17-20 [June 19, 2007, No. 2555-CC]).

Contrary to Beyer's contention, it waived the defense of election of remedies by failing to raise it as an affirmative defense in its amended answer (*see* CPLR 3018 [b]; *Ross v Ross Metals Corp.*, 111 AD3d 695, 696-697 [2013]; *Love v Rockwell's Intl. Enters., LLC*, 83 AD3d 914, 915 [2011]; *Jordan v Villetto*, 38 AD3d 716, 717 [2007]; *Becker v Shore Drugs*, 296 AD2d 515, 516 [2002]).

Beyer's remaining contentions regarding the branch of the motion which was for summary judgment are without merit.

Accordingly, the Supreme Court erred in denying that branch of Tuscan's motion which was for summary judgment on the issue of liability. Chambers, J.P., Sgroi, Miller and LaSalle, JJ., concur.